Exhibit 32

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| The State of LOUISIANA,<br>By and through its Attorney General,<br>Elizabeth B. Murrill; et al.,<br><br>PLAINTIFFS,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION; et al.,<br><br>DEFENDANTS. | Civil Action No. 3:24-cv-00563<br><br>Chief Judge Terry A Doughty<br>Magistrate Judge Kayla D. McClusky |

### DECLARATION OF DEBBIE CRITCHFIELD

Under 28 U.S.C. § 1746, I, Debbie Critchfield, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

#### BACKGROUND

1. My name is Debbie Critchfield. I am the Superintendent of Public Instruction for the State of Idaho. I serve as the chief executive officer of the Idaho Department of Education (the "Department") and am a member of the Idaho State Board of Education.

2. The Department is responsible for carrying out the policies, procedures, and duties authorized by law or established by the State Board of Education for all public elementary and secondary school matters. The Department also manages and distributes federal and state funds to public local education agencies.

3. Public education in Idaho is generally funded through federal grants, state funding appropriated by the Legislature, and local sales and property taxes. Federal funding accounts for approximately 18% of Idaho school funding distributed by the Department for 2022-2023.

4. Federal funding is primarily provided through entitlement and competitive grants, with certain grants being awarded to and administered by the State and certain grants being awarded directly to local education agencies to administer.

5. Last fiscal year, the Department distributed $505,500,000.00 in federal funding for its education programs and activities. This fiscal year, the State appropriations for public schools include $557,500,000.00 in federal funding for its education programs and activities.

6. In addition to administering and distributing federal funds, the Department retains a portion of funds to offset its administrative costs. The Department thus directly benefits from federal funds and will be harmed if those funds are terminated.

7. As the Idaho Superintendent for Public Instruction, I must sign an assurance that the Department will comply with Title IX and Title IX regulations as a condition of receiving federal funds.

**The Rule's Impact**

8. Recently, the U.S. Department of Education published a final rule titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance," 89 Fed. Reg. 33,474 (Apr. 29, 2024) (the "Rule"). The Rule has an effective date of August 1, 2024, *see id.* at 33,549.

9. As a preliminary matter, the Rule has already caused the Department harm. The Department has needed to expend time and resources to study the Rule and determine how to best advise local education agencies about the Rule.

10. If the Rule's effective date is not postponed and the Rule is not stayed, the Department will incur more costs to further understand the Rule and provide guidance to local education agencies that rely on the Department for direction. This more extensive review will need to be completed

immediately so the Department has time to develop relevant model policies and communicate with local education agencies before the end of the school year.

11. I anticipate local education agencies need more than two months to implement significant changes in policies by the August 1, 2024, effective date. Successful implementation will require engaging the community in the policy process, training employees, and educating students and patrons.

12. Further, 61% of Idaho's local education agencies are considered "rural" as defined by Idaho Code section 33-319. As such, the vast majority of Idaho's local education agencies employ Title IX Coordinators whose job descriptions include multiple roles beyond that of Title IX compliance. I expect some local education agencies will need to hire an additional employee or employees to achieve compliance with the Rule.

13. If the Department is not able to meet this unworkable deadline, Idaho risks losing its administrative funding and funding that is critical to the State's education system and to the education of Idaho children.

14. All the resources that will be expended to review and understand the Rule detract from the Department's efforts to improve the State's education system and schools.

15. The Rule also harms the State, because it increases regulatory burdens and obligations and multiplies litigation and liability risks. *See, e.g.*, 89 Fed. Reg. 33,881, 33,492, 33,850, 33,877. Time and money that would have otherwise been spent to advance education opportunities and improve education outcomes for Idaho students will be diverted to compliance costs, such as expanded recordkeeping requirements.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this tenth day of May, 2024 in Boise, Idaho.

*Debbie Critchfield*

_____
Debbie Critchfield