# Exhibit 3

Rescinded: This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

# REVISED SEXUAL HARASSMENT GUIDANCE: HARASSMENT OF STUDENTS BY SCHOOL EMPLOYEES, OTHER STUDENTS, OR THIRD PARTIES

## TITLE IX



**January 2001**

**U.S. Department of Education**
**Office for Civil Rights**

Rescinded: This document has been formally rescinded by the Department and remains available on the web for historical purposes only.

whether they take place in the facilities of the school, on a school bus, at a class or training program sponsored by the school at another location, or elsewhere.

A student may be sexually harassed by a school employee,[9] another student, or a non-employee third party (e.g., a visiting speaker or visiting athletes). Title IX protects any "person" from sex discrimination. Accordingly, both male and female students are protected from sexual harassment[10] engaged in by a school's employees, other students, or third parties. Moreover, Title IX prohibits sexual harassment regardless of the sex of the harasser, i.e., even if the harasser and the person being harassed are members of the same sex.[11] An example would be a campaign of sexually explicit graffiti directed at a particular girl by other girls.[12]

Although Title IX does not prohibit discrimination on the basis of sexual orientation,[13] sexual harassment directed at gay or lesbian students that is sufficiently serious to limit or deny a student's ability to participate in or benefit from the school's program constitutes sexual harassment prohibited by Title IX under the circumstances described in this guidance.[14] For example, if a male student or a group of male students target a gay student for physical sexual advances, serious enough to deny or limit the victim's ability to participate in or benefit from the school's program, the school would need to respond promptly and effectively, as described in this guidance, just as it would if the victim were heterosexual. On the other hand, if students heckle another student with comments based on the student's sexual orientation (e.g., "gay students are not welcome at this table in the cafeteria"), but their actions do not involve conduct of a sexual nature, their actions would not be sexual harassment covered by Title IX.[15]

Though beyond the scope of this guidance, gender-based harassment, which may include acts of verbal, nonverbal, or physical aggression, intimidation, or hostility based on sex or sex-stereotyping,[16] but not involving conduct of a sexual nature, is also a form of sex discrimination to which a school must respond, if it rises to a level that denies or limits a student's ability to participate in or benefit from the educational program.[17] For example, the repeated sabotaging of female graduate students' laboratory experiments by male students in the class could be the basis of a violation of Title IX. A school must respond to such harassment in accordance with the standards and procedures described in this guidance.[18] In assessing all related circumstances to determine whether a hostile environment exists, incidents of gender-based harassment combined with incidents of sexual harassment could create a hostile environment, even if neither the gender-based harassment alone nor the sexual harassment alone would be sufficient to do so.[19]

## IV. Title IX Regulatory Compliance Responsibilities

As a condition of receiving funds from the Department, a school is required to comply with Title IX and the Department's Title IX regulations, which spell out prohibitions against sex discrimination. The law is clear that sexual harassment may constitute sex discrimination under Title IX.[20]

Recipients specifically agree, as a condition for receiving Federal financial assistance from the Department, to comply with Title IX and the Department's Title IX regulations. The regulatory provision requiring this agreement, known as an assurance of