# Exhibit 5

Nos. 23-1078(L), 23-1130

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

B.P.J., by her next friend and mother, HEATHER JACKSON,

Plaintiff-Appellant

v.

WEST VIRGINIA STATE BOARD OF EDUCATION, *et al.*,

Defendants-Appellees

and

THE STATE OF WEST VIRGINIA; LAINEY ARMISTEAD,

Intervenors-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON

_____

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF PLAINTIFF-APPELLANT AND URGING REVERSAL

_____

KRISTEN CLARKE
 Assistant Attorney General

BONNIE I. ROBIN-VERGEER
ELIZABETH PARR HECKER
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C.  20044-4403
 (202) 616-5550

cisgender girls in school athletics.  Nor does H.B. 3293 substantially relate to the State's asserted interest in student safety.  The statute prohibits transgender girls from participating even in sports that involve little to no physical contact and applies to transgender girls who have not gone through endogenous puberty and thus do not fit the State's overbroad generalizations regarding the relative size, speed, and athletic abilities of boys versus girls.  As such, H.B. 3293 is not substantially related to the State's asserted justifications, and thus fails intermediate scrutiny.

2.  Furthermore, H.B. 3293 violates Title IX because it constitutes a categorical ban on transgender girls' participation on certain athletic teams, which is inconsistent with Title IX's overarching goal of ensuring equal opportunity.  Title IX prohibits discrimination on the basis of sex in education programs or activities that receive federal financial assistance.  By prohibiting transgender girls from participating on girls' sports teams because their sex assigned at birth was male, and thus causing them harm, H.B. 3293 discriminates on the basis of sex.

Additionally, the district court erred in relying on the Title IX regulation, 34 C.F.R. 106.41(b), to reject B.P.J.'s Title IX claim.  That regulation generally allows federal-funding recipients to provide sex-separate teams where selection for such teams is based on competitive skill or the activity involved is a contact sport.  Contrary to the court's assumption that Section 106.41(b) authorizes recipients to

<mark>require students participating on athletic teams to do so consistent with their sex assigned at birth, the regulation is silent as to the athletic teams on which transgender students may participate.</mark>  Because neither Title IX nor its regulations authorize recipients to categorically ban transgender girls from participating on girls' teams, such a ban violates Title IX's general nondiscrimination mandate.

## ARGUMENT

### I

### H.B. 3293 VIOLATES THE EQUAL PROTECTION CLAUSE AS APPLIED TO TRANSGENDER GIRLS LIKE B.P.J.

The Equal Protection Clause generally prohibits government actors "from treating differently persons who are in all relevant respects alike." *Nordlinger* v. *Hahn*, 505 U.S. 1, 10 (1992); see also *Grimm* v. *Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 606 (4th Cir.), as amended Aug. 28, 2020, cert. denied, 141 S. Ct. 2878 (2021).  "When considering an equal protection claim," this Court "first determine[s] what level of scrutiny applies" and then "ask[s] whether the law or policy at issue survives such scrutiny."  *Id.* at 607.

H.B. 3293 warrants intermediate scrutiny both because it classifies based on sex and because it discriminates against transgender women and girls as a class.  Furthermore, the law fails heightened scrutiny because, given its categorical application to all transgender women and girls, there is an inadequate fit between the means and ends of the statute.  As B.P.J.'s case illustrates, H.B. 3293's

- 21 -

## II

## H.B. 3293 VIOLATES TITLE IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. 1681(a).  By categorically prohibiting transgender female students from participating on certain athletic teams designated as being for women or girls, H.B. 3293 creates a substantial obstacle for funding recipients in West Virginia to accomplishing Congress's objective in enacting Title IX: ensuring equal athletic opportunity.  ==And contrary to the district court's reading, the Title IX regulation permitting schools to separate certain athletic teams by sex does not authorize categorical bans on transgender girls' participation in girls' sports.==

A.  *Title IX's Prohibition Of Discrimination "On The Basis Of Sex" Includes Discrimination Based On Gender Identity*

In *Bostock* v. *Clayton County*, the Supreme Court held that firing a person who is gay or transgender because of their sexual orientation or gender identity violates Title VII of the Civil Rights Act of 1964 (Title VII) because it constitutes discrimination "because of sex."  140 S. Ct. 1731, 1740-1741 (2020).  The Court defined the term "discrimination" in the Title VII context to include "distinctions or differences in treatment that injure protected individuals." *Id.* at 1753 (quoting

Under this Court's binding precedent, it is clear that H.B. 3293 discriminates based on sex. It prohibits transgender girls from participating on girls' sports teams because their sex assigned at birth was male. This is discrimination "on the basis of" sex. *Grimm*, 972 F.3d at 616-617. The question here, then, is whether Title IX regulations, which generally allow schools to provide sex-separate athletic teams where selection is based upon competitive skill or the activity is a contact sport, 34 C.F.R. 106.41(b), actually permit federal-funding recipients to categorically ban *all* transgender girls from participating on those teams consistent with their gender identity. As explained below, they do not.

B.     *Title IX Regulations Do Not Permit Funding Recipients To Categorically Ban Transgender Girls From Participating In A School's Athletics Program Consistent With Their Gender Identity*

Title IX's regulatory scheme is designed to ensure equal opportunity. In most contexts, Title IX requires schools to achieve this goal through coeducation—prohibiting the separation of students by sex. See, *e.g.*, 34 C.F.R. 106.34(a) (providing that except in limited circumstances, "a recipient shall not provide or otherwise carry out any of its education programs or activities separately on the basis of sex, or require or refuse participation therein by any of its students on the basis of sex"). The regulations set forth a similar rule for athletics: "No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against

court held that Section 106.41(b) permits funding recipients to require all students who participate on athletic teams to do so consistent with their "biological sex." JA4276-4277. But contrary to the court's pronouncement, Section 106.41(b) does not dictate the athletic teams on which transgender students may participate. Title IX and its regulations do not use the term "biological sex" or define the term "sex," and, more importantly, do not require that federal-funding recipients treat transgender students consistent with their "biological sex."

This Court already has recognized that Title IX's regulations do not mandate separation on the basis of "biological sex" in analogous circumstances in *Grimm* with respect to 34 C.F.R. 106.33, which permits federal-funding recipients to provide separate restrooms on the basis of sex. There, the Court explained that the regulation "suggests * * * that the act of creating sex-separated restrooms in and of itself is not discriminatory—not that, in applying bathroom policies to students like Grimm, the Board may rely on its own discriminatory notions of what 'sex' means." 972 F.3d at 618 (citation omitted). The same is true here. Section 106.41(b) is silent as to which athletic teams transgender students may join, and thus does not provide a "safe harbor" for categorical bans from sex-separate athletic teams based on a student's birth-assigned sex.[5]

---

[5] Because 34 C.F.R. 106.41(b) does not address how to assign transgender students to sex-separate teams, the fact that H.B. 3293 applies only to "teams