# Exhibit 30



September 11, 2022

**Miguel A. Cardona**
**Secretary of Education**
**U.S. Department of Education**
**VIA REGULATIONS.GOV**

RE:   Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance
Docket ID ED-2021-OCR-0166

*The Rule Will Harm Parental Rights and Endanger Children*

Dear Secretary Cardona,

Fifty years ago, Congress acted to protect equal opportunity for women by passing Title IX. Now, by radically rewriting federal law, the Biden administration is threatening the advancements that women have long fought to achieve in education and athletics. Along with denying women a fair and level playing field in sports, this new rule seeks to impose widespread harms, including threatening the health of adults and children, denying free speech on campus, trampling parental rights, violating religious liberty, and endangering unborn human life.

Alliance Defending Freedom (ADF) submits these comments on the Notice of Proposed Rulemaking (NPRM) on Title IX of the Education Amendments of 1972, Docket ID ED-2021-OCR-0166. ADF is an alliance-building legal organization that advocates for the right of all people to freely live out their faith. It pursues its mission through litigation, training, strategy, and funding. Since its launch in 1994, ADF has handled many legal matters involving Title IX, the First Amendment, athletic fairness, student privacy, and other legal principles addressed by the Notice of Proposed Rulemaking.

ADF strongly opposes any effort to redefine sex in federal regulations inconsistent with the text of Title IX itself, or otherwise impair First Amendment, due process, or parental rights. ADF thus urges the Department of Education to withdraw and abandon the NPRM.

These comments focus on the negative impact of the proposed rule on parental rights and the well-being of children. By redefining "sex" to encompass

"gender identity," the Department of Education wrongly seeks to compel schools to treat students as whatever sex they like — without parents' knowledge or consent.

I.     **Redefining "sex discrimination" to include gender-identity discrimination undermines parental rights and exposes children to the risk of long-term harms.**

What role do parents play in deciding the medical and psychological care of their children? Do school officials have the right to supersede the authority and stated intent of parents when it comes to some of the most important decisions regarding their children?

Most Americans, and especially most parents, would agree that outside of extreme circumstances, parents should be the ones making crucial decisions about their children's health and well-being.

Across the country, school districts are beginning to introduce policies that require staff to ask students to provide their preferred name and pronouns. The rationale underlying these questions is that students will express their "gender identity" through the use of these names and pronouns. Staff are then required to use any name and pronoun the student provides, even if the names and pronouns are different from the registration or enrollment documents provided by the student's parents. And staff are also required to keep the use of these preferred names and pronouns confidential from the student's parents or guardians — hiding their use when communicating with parents or guardians, for example, on documents sent home — unless the student specifically authorizes staff to disclose their use.

The implications of such policies are clear: School districts are enabling students to lead double lives — using one name and set of pronouns at school and another at home, without their parents' knowledge and consent. The lack of parental knowledge is no accident. The purpose of these policies is to cut parents out of decisions about their children until school officials have decided that they will approach their child's desire to live as the opposite sex the way that school officials want them to approach it.

Keeping such sensitive information secret from parents is a grave imposition on their fundamental rights. If schools keep secrets from parents, how can parents direct the upbringing of their children? In almost all cases, parents know their children better than any school official could. If schools give parents unreliable information about their children's mental health at school, how can parents make decisions regarding their children's education and healthcare in a manner that is best for their individual child and consistent with their family's values or religious beliefs? Because these policies turn school officials into gatekeepers — controlling

parents' access to information about their own children — they are unconstitutional.

As a result, ADF is already challenging these policies in court. The Harrisonburg City Public School Board in Virginia has one such policy. Upon a child's request, Harrisonburg's policy requires staff to immediately begin using opposite-sex pronouns and forbids staff from sharing information with parents about their child's request, instead instructing staff to mislead and deceive parents. This policy (and others like it) usurps parents' right to direct the upbringing of their children. It also forces school staff to violate their religious beliefs by affirming the board's view on gender identity — not to mention by lying to parents.

Such policies will only proliferate if the Department adds proposed section 106.10 (defining sex discrimination to include gender identity) and the new proposed definition of "sex-based harassment" under section 106.2 to the Title IX regulations. Indeed, the notice of proposed rulemaking cites with approval two specific policies — one from the California Department of Education, and another from Washoe County School District in Nevada — that instill these requirements around the use of names and pronouns.[1] According to the rule, the "requirement to permit students to participate [in education] consistent with their gender identity may require updating of policies."[2]

Those two approved policies, from California's Department of Education and Nevada's Washoe County School District, say that schools need to share *nothing* with parents when a child expresses gender dysphoria.

Washoe's policy says that transgender students have "the right to discuss and express their gender identity and expression openly and to decide when, with whom, and how much to share their private information." Staff *must not* "disclose information that may reveal a student's transgender or gender non-conforming status to others, including parents/guardians or other staff members," unless the student specifically authorizes it. Similarly, California insists that with "rare exceptions, schools are required to respect the limitations that a student places on the disclosure of their transgender status, including *not* sharing that information with the student's parents." Instead, once students assert an alternative gender identity, the school must refer to them by preferred pronouns, let them use the bathrooms or locker room of their choice, and practice so-called "social transition" or "social affirmation" (a potentially life-changing psychotherapeutic intervention at the center of a roiling international debate) — all while intentionally deceiving

---

[1] Notice of proposed rulemaking document – p627; 87 Fed. Reg. at 41,529.
[2] 87 Fed. Reg. at 41,391.

parents. They're kept in the dark and cut out of crucial decisions about their own children.[3]

Given the clear threat to parental rights that these policies represent, as well as the potential harms faced by students who have no parental oversight on such changes, ADF strongly opposes the Department's proposed redefinition of sex to include gender identity. The Department should not adopt these proposed regulations.

### A. The Department must expressly consider the impact on parental rights.

The proposed rule must directly consider the impact on parental rights, in each of its applications and across all of its changes to Title IX.

Parents take care of us before we can take care of ourselves. They bring us into the world. They teach us to walk, to talk, to love. They prepare us to enter society and live as upstanding citizens.

Of all the people who share in shaping a child's moral character and the adults they become — from teachers and coaches to spiritual mentors, extended family, and others — parents have far and away the deepest and most enduring influence. The men and women we are often reflect the men and women our parents were.

Everyone should care about how children are raised. They become our nation's leaders, after all. Everyone should also be able to agree that, in nearly every case, parents are best positioned to protect their children's health and welfare.

Children are first and foremost the responsibility of their parents. The unique and intimate relationship between a parent and a child creates a duty and a corresponding natural right. Parents' right to direct the upbringing and education of their children is "pre-political." What does that mean? Parental rights are natural rights that exist before the state. They cannot be given or taken away by a government. In the words of the U.S. Supreme Court, children are not "mere creature[s] of the state."[4]

Parental rights include, but are not limited to, making decisions regarding children's education and healthcare in a manner consistent with their family's

---

[3] Max Eden, Title IX's anti-parent secret agenda (June 24, 2022), https://www.washingtonexaminer.com/restoring-america/community-family/title-ixs-anti-parent-secret-agenda.
[4] *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 535 (1925).

values and religious beliefs. Parents must do so to promote their children's general health and well-being.

Although the law recognizes the rights of parents, parental rights are under increasing attack from public-school indoctrination and state governments. Sometimes, tragically, parents fail at providing their children's most basic needs. When that happens, the government plays an important role. But the government should never replace parents. Great teachers recognize this. Therefore, they seek to support the role of parents including, and especially, in the classroom.

Students deserve to learn in a classroom where they, their parents, and their views are treated with respect. Imposing a particular (and hotly debated) political viewpoint on students on questions about gender and sexual orientation stigmatizes those who hold disfavored views. According to Mary Hasson of the Ethics and Public Policy Center, "An education environment that, implicitly or explicitly, labels or treats students as 'bigoted' because of their beliefs denies that child the right to a supportive educational environment, effectively denying them meaningful access to the right to an education."[5]

Alliance Defending Freedom litigates precedent-setting cases to protect parents and help to shape and defend public policy that enshrines parents' rights as fundamental.

### B. Efforts to hide the use of students' "preferred" names and pronouns from their parents or guardians represent a clear threat to parental rights.

Redefining the word "sex" in Title IX in the new Biden administration rule will pressure schools to mislead emotionally distressed children into thinking they can change their sex. Schools could face investigation if they do not address students who are confused about their sex with pronouns and names that correspond to the opposite sex or to the concept of being "non-binary."

The proposed rule could even mandate "gender support plans," which challenge the truth that we are born male and female and erroneously suggest that a doctor "assigns" a child's sex after the child is born. Schools often develop these plans without informing parents or asking for their consent. Some schools even lie to parents about the existence of these plans. The implementation of such plans in schools from coast-to-coast is directly undermining the vital role that parents play in guiding children's education and health care decisions.

---

[5] Emilie Kao & Jared Eckert, *Promise to America's Children Warns of Destructive Equality Act LGBT Agenda*, Daily Signal (Feb. 18, 2021), https://www.heritage.org/gender/commentary/promise-americas-children-warns-destructive-equality-act-lgbt-agenda.

Children who experience feelings of confusion or discomfort with their bodies need to be protected from the irreversible damage that results from social and medical interventions on their young minds and bodies. They need compassion and understanding. They need wise counsel and the truth.

They need their parents. Parents love and know their children best, and it is their fundamental right to help their children make decisions about their physical and mental health.

The truth is that there are only two "sexes." Gender dysphoria (the distress someone experiences when they have a disconnect between their bodily sex and internal sense of gender) is a serious condition that should be treated with humane and compassionate responses. Adults, youth, and children who suffer from gender dysphoria deserve to be treated with the utmost respect and great compassion, but no child is born in the wrong body. Schools should not encourage students to treat their bodies, including their biological sex, as a mistake.

All children need protection, and redefining "sex" under Title IX (or any other statute) will endanger them. In most cases, children need the protection *of* their parents — not protection *from* their parents. This is particularly the case with children suffering from distress caused by feelings of discomfort with their sex. Kids struggling with their gender identity should be free to voice their distress, but parents (not schools) must be allowed to choose the best mental health treatment for their individual child's needs. Schools cannot presume that all parents are unfit to make such choices.

### C. The proposed rule unconstitutionally seeks to violate parental rights.

Policies like the proposed rule that ignore biological reality — ignore sex — pose serious risks to student health and safety and undermine the fundamental right of parents to direct the upbringing and education of their children. And the U.S. Supreme Court has long held that the Constitution safeguards that right.

In particular, erroneously redefining "sex" to include gender identity will hasten the spread of secretive "gender support plans," which, at their core, undermine parental rights. Under the Department's incorrect view of Title IX, schools may be required to violate parental rights simply because parents do not conform to politically correct ideologies. No government authority should override the authority of parents to protect the well-being of their children by enacting such policies.

Where school policy allows students to begin a secret life at school, inconsistent with their sex, without the knowledge and consent of their parents, the policy violates the constitutional rights of the parents.

Parents have a fundamental human right to direct the upbringing of their children. One of the most fundamental and longest recognized "liberty interests" protected by the Fourteenth Amendment to the U.S. Constitution is the right of parents to "direct the upbringing and education of children under their control."[6]

Case law establishes three important principles with respect to parents' rights.

First, parents are the primary decision-makers with respect to their minor children — not the children's school.[7]

Second, courts recognize that "parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions,"[8] and that parents, not government officials, "hav[e] the most effective motives and inclinations and [are] in the best position and under the strongest obligations" to decide what is best for their children.[9]

Third, parents' constitutional rights reach their peak on "matters of the greatest importance."[10] Medical and health-related decisions, for example, are generally reserved for parents: "Most children, even in adolescence, simply are not able to make sound judgments concerning many decisions, including their need for medical care or treatment. Parents can and must make those judgments."[11]

School policies that undermine this fundamental right of parents have been met with legal challenges across the country.[12] Some public schools encourage

---

[6] *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality op.).
[7] *Parham v. J.R.*, 442 U.S. 584, 602 (1979) ("Our jurisprudence historically has reflected . . . broad parental authority over minor children.").
[8] *Parham,* 442 U.S. at 603–04.
[9] *Jackson v. Benson*, 218 Wis. 2d 835, 879 (1998).
[10] *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 184 (3d Cir. 2005); *see Wisconsin v. Yoder*, 406 U.S. 205, 233–34 (1972).
[11] *Parham*, 442 U.S. at 603
[12] For information about some of these legal challenges with which ADF is involved, see generally Compl., *Doe v. Madison Metro. Sch. Dist.*, No. 20-CV-454 (Wis. Cir. Ct. filed Feb. 18, 2020), *available at* https://bit.ly/3RBohv4; Compl., *B.F. v. Kettle Moraine Sch. Dist.*, No. 21-CV-1650 (Wis. Cir. Ct. filed Nov. 17, 2021), https://bit.ly/3TYlqOb; Compl., *D.F. v. Harrisonburg City Pub. Sch. Bd.*, No. CL22-1304 (Va. Cir. Ct. filed June 1, 2022), https://bit.ly/3L2boHO. For information about similar legal challenges filed around the country, see Donna St. George, The Washington Post, *Gender transitions at school spur debate over when, or if, parents are told*, (July 18, 2022), https://wapo.st/3qnO7GS, which notes lawsuits in Massachusetts, Florida, Wisconsin, Kansas, Virginia and Maryland.

students to identify as the opposite sex at school and hide it from parents. And some government officials pressure parents to "transition" their children under threat of abuse charges. ADF defends parents' right to make medical decisions for their children.

As these lawsuits make clear, it is not just keeping the use of preferred names and pronouns a secret that is problematic; even where the parents are aware of their child's wishes to use different names and pronouns, the policy requires the school to use the different name and pronoun over the parents' direction.[13] Parents' directions may be considered as part of medical and/or religious considerations. Yet, even in these circumstances, staff are required to use the preferred pronouns requested by students, which unlawfully interferes with the parents' free-exercise rights and their fundamental right to make decisions concerning the upbringing and care of their child. Again, the proposed redefinitions would align with the efforts of these unlawful policies.

Title IX does not require this, and the Constitution does not allow schools or the Department to attempt to do so. As one Kansas court held, "it is illegitimate to conceal information from parents for the purpose of frustrating their ability to exercise [their] fundamental right" to direct the education and upbringing of their child.[14] In that case, Pamela Ricard, a math teacher at Fort Riley Middle School sought to halt enforcement of a school district policy that required her to violate her religious beliefs by lying to students and parents. Troublingly, teachers were forced to use a student's "preferred name" to address the student in class while using the student's legal name when speaking to parents. Ricard sued school district officials after they reprimanded and suspended her for addressing a student by the student's legal and enrolled last name. The federal court ruled that she is free to speak without violating her conscience by communicating with parents in a manner consistent with how she is required to address the students at school. Additionally, the court acknowledged that Ms. Ricard can continue addressing students by their preferred names while avoiding pronouns for students who have requested pronouns inconsistent with their biological sex. The court also found that Ricard is likely to prevail on her First Amendment free exercise of religion claim.[15]

Particularly relevant here, the court rejected the school district's claimed interest in compelling Ms. Ricard to withhold information from parents: "It is difficult to envision why a school would even claim — much less how a school could

---

[13] *See* Compl., *supra*, *B.F. v. Kettle Moraine Sch. District*, No. 21-CV-1650, ¶ 35; *see also Meriwether v. Hartop*, 992 F.2d 492, 507 (6th Cir. 2021) (reversing order dismissing professor's free-speech challenge to policy requiring use of preferred pronouns in classroom).
[14] *Ricard v. USD 475 Geary County Schools School Board Members*, No. 5:22-cv-04015-HLT-GEB, 2022 WL 1471372, at *8 n.12 (D. Kan. May 9, 2022).
[15] ADF, Court: Kansas teacher free to speak consistent with her religious beliefs, https://bit.ly/3TW59cG.

8

establish — a generalized interest in withholding or concealing from the parents of minor children, information fundamental to a child's identity, personhood, and mental and emotional well-being such as their preferred name and pronouns."[16]

But this is not the only case involving the violation of parental rights under similar attempts to redefine sex discrimination, as the Department proposes to nationalize in the proposed rule. Officials at Kettle Moraine School District in Wisconsin sought to defy the wishes of parents regarding their children who struggle with gender dysphoria. One of the Wisconsin couples in this case was striving to work through gender dysphoria with their 12-year-old daughter, who was pushed by a counseling program to say she wanted to be a boy. Her parents, who best understood her needs and long-term health, wanted to give her more opportunities to work through her very real struggles before making any permanent changes, including changes to her name or pronoun usage.

Unfortunately, the school that their daughter attended disregarded her parents' directions. School officials told the parents they would refer to their daughter by whatever name or pronoun she chose, without first informing them or getting their consent. Treated as an afterthought — really, treated more like an obstacle — the parents were ultimately forced to withdraw their daughter from the school to protect her and preserve their God-given, constitutionally protected parental role.

The school district policy takes life-altering decisions out of parents' hands and gives them to school bureaucrats, who have no expertise whatsoever in these matters. The school district and officials are substituting their own controversial ideology for basic biological reality — a harm that goes far beyond simple pronoun usage. Schools cannot even give students aspirin or basic medication without parental consent. Yet, in the case of significant and potentially life-altering decisions about gender identity, officials are overruling the expressed desire of parents regarding the health of their child.[17]

School districts should not override the prerogative of parents. Doing so only hurts children. The proposed rule thus should change course and avert mandating these policies nationwide.

---

[16] *Ricard*, 2022 WL 1471372, at *8.
[17] ADF, Parents Forced to Sue School District to Protect Right to Care for Their Children, https://bit.ly/3cZIgnY.

### D. Policies that immediately accept students' requests to use "preferred" names and pronouns at school fail to consider the harms of an "affirmative" approach.

Inherent in these policies is an underlying assumption that any discomfort or incongruence that a child experiences with their natal sex must be met with an "affirmative" response. This approach recommends that any expression of a new gender identity should be immediately accepted as decisive, and thoroughly affirmed by means of consistent use of clothing, names, or pronouns, for example. But this approach is not supported by the available clinical data, nor does it take account of the long-term (and indeed potentially lifelong) harms that it implicates.

In an expert affidavit provided to the court in *Doe v. Madison Metropolitan School District*, Dr. Stephen B. Levine, Clinical Professor of Psychiatry at Case Western Reserve University School of Medicine, identified many of the concerning implications of pursuing an "affirmative" approach, particularly in the school context without parental involvement.[18]

In that affidavit, Dr. Levine outlined that among psychiatrists and psychotherapists who practice in the area, there are widely varying views concerning both the causes of and appropriate therapeutic response to gender dysphoria in children, and that existing studies do not provide a basis for a scientific conclusion as to which therapeutic response results in the best long-term outcomes for affected individuals.[19] Nonetheless, these school policies unquestioningly adopt an "affirmative" response to students manifesting gender dysphoria or similar discomfort with their natal sex.

Furthermore, Dr. Levine explained that a majority of children (in several studies, a very large majority) who are diagnosed with gender dysphoria "desist" — that is, their gender dysphoria did not persist — by puberty or adulthood.[20] At the same time, studies also suggest that the active affirmation of transgender identity in young children will substantially reduce the number of children "desisting."[21]

Dr. Levine went on to explain how a so-called "social transition" as part of an "affirmative" response (*i.e.*, the use of different names, pronouns, or clothes, for example) is itself an important intervention with profound implications for the long-term mental and physical health of the child.[22]

---

[18] *See* Expert Aff. of Dr. Stephen B. Levine, *Doe v. Madison Metro. Sch. Dist.*, No. 20-CV-454 (Wis. Cir. Ct. signed Feb. 10, 2020), https://bit.ly/3TSOerz.
[19] *Id.* ¶¶ 22–44.
[20] *Id.* ¶¶ 60–62.
[21] *Id.* ¶¶ 63–64.
[22] *Id.* ¶¶ 65–69.

10

Dr. Levine outlined how putting a child or adolescent on a pathway towards life presenting as the opposite sex puts that individual at risk of a wide range of long-term or even lifelong harms, including sterilization (whether chemical or surgical) and associated regret and sense of loss; physical health risks associated with exposure to elevated levels of cross-sex hormones; surgical complications and lifelong after-care; alienation of family relationships; inability to form healthy romantic relationships and attract a desirable mate; and elevated mental health risks.[23]

Dr. Levine also explained how parental involvement is necessary for accurate and thorough health assessment of a child, and further for the effective psychotherapeutic treatment and support of the child.[24]

Indeed, Dr. Levine's more recent expert report submitted in *B.P.J. v. West Virginia Board of Education* (concerning a West Virginia law limiting women's sports to females) indicated that the concerns surrounding the adoption of an "affirmative" approach have only heightened in light of new scientific studies and international developments.[25]

Dr. Levine's latest report noted that the knowledge base concerning the "affirmative" treatment of gender dysphoria has very low scientific quality with many long-term implications remaining unknown.[26] Furthermore, Dr. Levine explained that internationally, there has been a marked trend away from "affirmative" care and toward better psychological care.[27]

Yet these important considerations receive no attention by the Department in its promulgation of the proposed regulations. Instead, the proposed rule threatens to standardize the psychotherapeutic intervention known as "social transition" and then to make physical "transition" interventions standard medical care for gender-dysphoric minors. Puberty blockers and cross-sex hormones could be offered to children as young as 9 years old. After receiving these, minors could then undergo irreversible "top" or "bottom" surgery.

The Department should instead consider that children who struggle with discomfort with their sex should not be medicalized or subject to life-altering procedures. They should be given counseling, and this counseling should take the form of watchful waiting or other assistance furthering desistance. This type of talk-therapy counseling should not be wrongly labeled "conversion therapy," and

---

[23] *Id.* ¶¶ 98–120.
[24] *Id.* ¶¶ 70–84.
[25] Decl. & Expert Rep. of Dr. Stephen B. Levine, *B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-cv-00316 (S.D. W. Va. Feb. 23, 2022), ECF 286-1, https://bit.ly/3L19WFw.
[26] *Id.* ¶¶ 140–59.
[27] *Id.* ¶¶ 76 & 82.

counselors and parents should be free to continue to obtain it as the proper course of treatment. Moreover, because this is the proper course, the Department should be at pains to make sure that Title IX does not coerce any contrary standard of care. It should not be used to promote other medical procedures, especially on children, or to promote "social transition," which often sets students on an irreversible course towards unnecessary, dangerous, and experimental medical interventions, increasing the odds of the persistence of gender-identity issues.

In short, neither the Department nor schools are being supportive, affirming, or inclusive when they seek to change the course of psychosocial development and allow students to purport to select their own gender or sex. Instead, they are putting children on the course of needing lifelong medical care and are putting children at risk of many serious complications, including sterility, sexual dysfunction, infections, and other serious problems. These problems are only compounded when Title IX encourages or requires schools to encourage students to identify with another sex without parental involvement or knowledge.

### E. The proposed rule wrongly overrides parental rights on curricula and facilities.

The same considerations extend to matters of parental control over curricular and facilities decisions. Many public schools are indoctrinating students in harmful views of human sexuality and race, injecting ideas from critical race and critical gender theories into classrooms. ADF helps parents and teachers challenge this indoctrination of students.

Because the proposed Title IX rule frames gender ideology as an anti-discrimination issue, it is possible that schools will not seek parental permission for children to participate in lessons on choosing and purportedly changing one's sex. Indeed, schools will very likely use Title IX's antidiscrimination mandate to justify denying parental opt-outs from these controversial lessons.

The proposed rule likely also grants children an absolute right to use school facilities and participate in activities "consistent with their gender identity," regardless of whether their parents agree or are even aware of that identity. Schools will feel free to allow students to select the sex-separated restrooms, overnight field trip accommodations, camp cabins, locker rooms, and other intimate facilities of their choice and based on their gender identity, not their sex — without parental knowledge or prior approval.

The proposed rule's efforts to redefine the scope of Title IX to address off-campus activity, including on an expansive harassment theory, also sets schools on a collision course with family relationships. Under the proposed rule, schools may

feel emboldened to pursue parents under the auspices of Title IX enforcement for at-home conduct out-of-step with the Administration's harmful gender ideology.[28]

The proposed rule should add regulatory text expressly disclaiming these consequences. It should directly consider these issues, explain whether the rule requires these consequences, and quantify their costs and benefits. Any failure to address parental rights would be arbitrary decision making.

II. **The Department should consider alternatives that do not harm parental rights and the interests of children.**

   A. **The Department should expressly consider alternative Title IX policies that provide accountability, choice, and transparency, especially when it comes to parental rights.**

Parents need laws that provide government accountability, choice, and transparency.[29] As this comment has shown, the proposed rule fails to advance these foundational values.

The Department thus should withdraw the proposed rule and consider alternative policies that meet these three important policy goals for parental rights. This alternative policy should include the following elements, which should be included in Title IX rulemaking. These rights come from the U.S. Constitution, federal law, and state law, and any Title IX rulemaking should respect these rights to avoid conflicts with state law.

*Accountability*

- Every mother or father may hold the government accountable for infringing on their rights to care for their child.

- Every mother or father should be able to direct the upbringing, education, and care of their children. Any infringement on these fundamental rights by a federal, state, or local government policy must meet the strictest legal standard.

*Choice*

- Every mother or father has the responsibility and right to choose the education and medical treatment that they deem best for their child.

---

[28] Kaylee McGhee White, *Biden's new Title IX rules deputize teachers to override parents on gender identity*, New York Post (Aug. 15, 2022), https://bit.ly/3RMCDbs.

[29] ADF, Promise to America's Parents, https://bit.ly/3xc6a6t.