# Exhibit 31

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| The State of LOUISIANA, By and through its Attorney General, Elizabeth B. Murrill; et al., <br><br> PLAINTIFFS, <br><br> v. <br><br> U.S. DEPARTMENT OF EDUCATION; et al., <br><br> DEFENDANTS. | Civil Action No. 3:24-cv-00563 <br><br> Chief Judge Terry A Doughty <br> Magistrate Judge Kayla D. McClusky |

## DECLARATION OF PRESTON CADE BRUMLEY, SUPERINTENDENT OF THE LOUISIANA DEPARTMENT OF EDUCATION

Under 28 U.S.C. § 1746, I, Preston Cade Brumley hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

### BACKGROUND

1. I am the Louisiana State Superintendent of Education and serve as the administrative head of the Louisiana Department of Education (the "Louisiana Department"). *See* La. Rev. Stat. § 17:24(A).

2. The Louisiana Department of Education, among other things, implements the State's policies and establishes the academic standards for elementary and secondary public schools in Louisiana. The Louisiana Department of Education also "administer[s] and distribute[s] all federal funds" the State receives for elementary and secondary education. La. Rev. Stat. 17:24(C).

3. Public elementary and secondary education in Louisiana is generally funded through federal grants, state funding appropriated by the Legislature, and local sales and property taxes. Federal

funding accounts for approximately 13% of Louisiana school funding. State and local funding accounts for approximately 44% and 43% of Louisiana school funding respectively.

4. Federal funding for elementary and secondary education in Louisiana is primarily provided through entitlement and competitive grants, with certain grants being awarded to and administered by the State and a few grants being awarded directly to local school boards to administer. In Louisiana, most grants are awarded to the Louisiana Department of Education and then allocated to the local school boards and charter schools.

5. Along with other sources of federal funding, Louisiana receives funds under Sections 611 and 619 of the Individuals with Disabilities Education Act, Titles 1–4 and 5 of the Elementary and Secondary Education Act, the McKinney-Vento Education for Homeless Children and Youth Program, and the 21st Century Community Learning Centers Program as well as other needed programs that benefit the children who attend Louisiana public schools.

6. In fiscal year 2022-2023, the Louisiana Department of Education received $725,432,889 of federal funds for education programs and activities throughout Louisiana (which does not include federal funds the State received for its colleges and universities). In fiscal year 2023-2024, the Louisiana Department of Education received $771,558,381 of federal funds for education programs and activities in Louisiana (which does not include federal funds the State received for its colleges and universities). The amount of federal funds to be awarded in fiscal year 2024-2025 has not yet been finally determined but is likely to be comparable.

7. As a condition of receiving federal funds, I as the State Superintendent must sign an assurance that the Louisiana Department of Education will comply with Title IX and Title IX regulations, and the Department must conduct compliance activities required by agencies providing funding to ensure compliance with Title IX regulations.

8. In addition to administering and distributing federal funds, the Louisiana Department of Education retains a portion of funds to offset its administrative costs.

### THE RULE'S IMPACT

9. Recently, the U.S. Department of Education published a final rule titled "Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance," 89 Fed. Reg. 33,474 (Apr. 29, 2024) (the "Rule"). The Rule has an effective date of August 1, 2024, *see id.* at 33,549; however, the Rule has already caused and will continue to cause the Louisiana Department irreparable harm.

10. The Louisiana Department of Education does not wish to comply with the Rule, which it believes is unlawful and contrary to the best interests of students and teachers in the State. The Louisiana Department of Education and Local Education Authorities, however, will be forced to comply or else risk losing administrative and program funding that is critical to the State's education system and to the education of Louisiana children many of whom are the most vulnerable due to poverty and/or special characteristics.

11. The Louisiana Department of Education has been forced to expend time and resources to begin reviewing the Rule and to notify local school boards about the Rule. *See* Ex. A (State Superintendent's Letter to Local School Boards).

12. If the Rule's effective date is not postponed and the Rule is not stayed, the Louisiana Department of Education will need to incur more substantial costs to further understand the Rule and terms of compliance. It is anticipated that local education authorities will request guidance from the Louisiana Department of Education before undertaking compliance activities that may be necessitated by the Rule which will require conducting a more extensive review of the Rule by outside special counsel with intensive experience in Title IX and related issues as well as the newly imposed requirements of the Rule. This more extensive review will need to be completed by June 1st, so the

3

Louisiana Department of Education has time to update its policies, educate and train staff relative to the standards of Title IX compliance activities under the new Rule as required by agencies providing funding (See LA. Admin. Code, Title 28, Part 1, Subpart 1, Chapter 9, Sec. 903) and communicate with local school boards before the August 1, 2024 effective date.

13. All the resources that have been and will need to be expended to review and understand the Rule detract from the Louisiana Department of Education's efforts to improve the State's education system and schools that have a high percentage of students in poverty and/or with special characteristics and needs.

14. The Rule also harms the State, because it increases regulatory burdens and obligations and multiplies litigation and liability risks. *See, e.g.*, 89 Fed. Reg. 33,541, 33,866–67, 33,851, 33,858, 33,881. Time and money that would have otherwise been spent to advance education opportunities and improve education outcomes for Louisiana students will be diverted to compliance costs, such as expanded recordkeeping requirements.

15. In addition, the Rule places the Louisiana Department and schools in an untenable position, because it will be impossible to comply with the Rule and with Louisiana's Fairness in Women's Sports Act (not to mention other laws that may soon be enacted, *see* H.B. 610, 2024 Leg. Reg. Sess. (La. 2024); H.B. 121, 2024 Leg. Reg. Sess. (La. 2024).

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 10th day of May, 2024 in Baton Rouge, Louisiana.

*[signature]*
PRESTON CADE BRUMLEY
SUPERINTENDENT
LOUISIANA DEPARTMENT OF EDUCATION

# Exhibit A



DR. CADE BRUMLEY
STATE SUPERINTENDENT

CLAIBORNE BUILDING
1201 N 3RD ST.
BATON ROUGE, LA 70802

LOUISIANA DEPARTMENT OF EDUCATION

**DATE:** April 22, 2024

**TO:** School System Leaders & Schools Boards

**FROM:** Dr. Cade Brumley, State Superintendent of Education

**SUBJECT:** Response to New Federal Title IX Rules

On Friday, April 19, 2024, the U.S Department of Education (ED) released new Title IX rules[1], effective August 1, 2024, that expands the interpretation of discrimination on the basis of sex to include gender identity[2] and other categories.

For example, under the new Title IX rules, schools would be required to allow biological males who identify as females to receive access to women and girls' locker rooms and school restrooms or face sanctions for a rule violation on the basis of sex discrimination. In another example, the new rule could force educators to reference students by names and pronouns not consistent with their biological sex and also erode parent notification of such student desires. It could also force schools to establish extensive bureaucracies to police free speech on campus.

Furthermore, these new Title IX rules could be in direct contradiction with Louisiana's Fairness in Women's Sports Act, a law that affirms school-sanctioned athletic participation must be divided by biological sex unless the configuration is co-ed in nature. While ED claims these new rules do not speak to sports, the new rules explicitly mentions athletics over 30 times. Clearly, sports in Louisiana could be impacted by the new rules and, if implemented, create a conflict with Louisiana law.

These new rules have been in development for nearly two years, and I have previously submitted comments in staunch opposition as it alters the long-standing definition that has created fairness and equal access to opportunity for women and men. At this time, my opposition to these new Title IX rules remains unchanged. The Title IX rule changes recklessly endanger students and seek to dismantle equal opportunities for females.

Presently, my office is working with the Office of the Governor and our Attorney General to review the 1500-pages of new rules[3] and determine their overall impact. It is inevitable that there will be a legal challenge to the new rules, contesting the unprecedented unilateral expansion of the long-standing prohibition against discrimination based on "sex" to include "sex stereotypes, sex related characteristics (including intersex traits) pregnancy or related conditions, sexual orientation and gender identity." This expanded definition is unsupported by the text of Title IX, its implementing regulations, and the law's extensive congressional history and record of debate and deliberation. This rule runs contradictory to the entire foundation of Title IX.

The Louisiana Department of Education recommends that school systems maintain communication with their legal counsel on this matter. Further, it remains my position that schools should not alter policies or procedures at this time.

CC: Governor Jeff Landry
 Attorney General Liz Murrill
 Members of the The Louisiana State Board of Elementary and Secondary Education (BESE)
 Louisiana High School Athletic Association (LHSAA)

---

[1] https://www2.ed.gov/about/offices/list/ocr/docs/t9-unofficial-final-rule-2024.pdf
[2] https://www.whitehouse.gov/briefing-room/presidential-actions/2021/03/08/executive-order-on-guaranteeing-an-educational-environment-free-from-discrimination-on-the-basis-of-sex-including-sexual-orientation-or-gender-identity/
[3] https://www2.ed.gov/about/offices/list/ocr/docs/t9-unofficial-final-rule-2024.pdf