UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| The State of LOUISIANA, By and through its Attorney General, Elizabeth B. Murrill; et al., | Civil Action No. 3:24-CV-00563-TAD-KDM |
| PLAINTIFFS, | |
| v. | Chief Judge Terry A. Doughty Magistrate Judge Kayla D. McClusky |
| U.S. DEPARTMENT OF EDUCATION; et al., | |
| DEFENDANTS. | |

**REPLY IN SUPPORT OF MOTION FOR A POSTPONEMENT OR STAY UNDER 5 U.S.C. § 705 OR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................................ii

INTRODUCTION ...................................................................................................................................1

ARGUMENT............................................................................................................................................1

    I.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims. ...............................1

        A.  The Rule Is Contrary to Law and Exceeds Statutory Authority. ............................1

            1.  Defendants' redefining of sex discrimination flouts Title IX............................1

            2.  The Rule's harassment standard is contrary to Title IX and the First Amendment..................................................................................................4

            3.  Defendants have no authority to rewrite Title IX and decide major questions........................................................................................................6

        B.  The Rule's Conditions Violate the Spending Clause................................................7

        C.  The Rule is Arbitrary and Capricious. ......................................................................8

    II.   Plaintiffs Satisfy the Other Preliminary Relief Factors. ..............................................9

    III.  The Court Should Postpone the Rule's Effective Date or Stay the Rule........................................................................................................................10

CONCLUSION......................................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Adams v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) (en banc) ............................................................................... 2, 7

*B.P.J. ex rel. v. W. Va. State Bd. of Educ.*,
  98 F.4th 542 (4th Cir. 2024) .................................................................................................... 2

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ........................................................................................................ passim

*Data Mktg. P'ship, LP v. U.S. Dep't of Labor*,
  45 F.4th 846 (5th Cir. 2022) .................................................................................................. 10

*Davis v. Monroe Cnty. Bd. of Educ.*,
  526 U.S. 629 (1999) ................................................................................................................ 4

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) .................................................................................................................. 6

*Jackson v. Birmingham Bd. of Educ.*,
  544 U.S. 167 (2005) ........................................................................................................... 2, 12

*L.W. ex rel. Williams v. Skrmetti*,
  83 F.4th 460 (6th Cir. 2023) .................................................................................................... 2

*Louisiana v. U.S. Dep't of Energy*,
  90 F.4th 461 (5th Cir. 2024) .................................................................................................... 8

*Meriwether v. Hartop*,
  992 F.3d 492 (6th Cir. 2021) ............................................................................................... 3, 5

*Mexican Gulf Fishing Co. v. U.S. Dep't of Commerce*,
  60 F.4th 956 (5th Cir. 2023) .................................................................................................... 6

*NFIB v. Sebelius*,
  567 U.S. 519 (2012) ................................................................................................................ 8

*Price Waterhouse v. Hopkins*,
  490 U.S. 228, 239 (1989) ........................................................................................................ 3

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) ................................................................................................... 6

*Texas v. EPA*,
  829 F.3d 405 (5th Cir. 2016) ................................................................................................. 10

*United States v. Virginia*,
   518 U.S. 515 (1996) ................................................................................................................2

**Statutes and Regulations**

5 U.S.C. § 705 ...............................................................................................................................10

20 U.S.C. § 1681 .............................................................................................................................2

20 U.S.C. § 1686 .............................................................................................................................2

89 Fed. Reg. 33,474 (Apr. 29, 2024) ..................................................................................... 1, 3, 5

La. Rev. Stat. § 9:62 .....................................................................................................................10

La. Rev. Stat. § 17:2122 ...............................................................................................................10

Miss. Code § 29-18-1 ...................................................................................................................10

**INTRODUCTION**

Nothing Defendants say rebuts Plaintiffs' showing that the Rule, 89 Fed. Reg. 33,474 (Apr. 29, 2024), is irreconcilable with Title IX's text and undermines the congressional intent that is manifest in the text—to promote equal opportunities and respect for both sexes. Nor can Defendants disprove that the Rule has already caused unrecoverable compliance costs, which will exponentially increase as the August 1st effective date approaches and Plaintiff School Boards must change policies, train employees, and hire architects to begin drawing up construction plans. Plaintiff States are also incurring compliance costs and suffering sovereign injuries as they face coercion to change their laws and must choose between acquiescing to the Rule (and thus violating constitutional rights, depriving women and girls of opportunities, and abolishing safety and privacy measures) or losing significant funding. Indeed, Defendants cannot refute that Plaintiffs have more than satisfied all preliminary relief factors and that they need relief immediately. That is why Defendants' opposition alternates between mischaracterizing Plaintiffs' arguments and ignoring the arguments and evidence altogether. Defendants' resort to such tactics underscores the propriety of granting relief.

**ARGUMENT**

I. **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.**

    A. **The Rule Is Contrary to Law and Exceeds Statutory Authority.**

        1. *Defendants' redefining of sex discrimination flouts Title IX.*

As explained, the Rule is at odds with Title IX, which generally prohibits discrimination based on biological sex (not discrimination based on concepts like "gender identity" that are distinct from biological sex) and allows—and sometimes mandates—sex differentiation based on biological differences. *See* Pls.' Br. 2–16. Because Defendants cannot show otherwise, they mischaracterize the statutory scheme, spend pages addressing a red herring rather than responding meaningfully to Plaintiffs' actual arguments, and misinterpret *Bostock v. Clayton County*, 590 U.S. 644 (2020).

Defendants start by glossing over important features of Title IX. For example, Defendants purport (at 6, 10) to assume "sex" means biological sex and move on. Defendants, however, fail to interpret Title IX accordingly and disregard Title IX's respect for biological differences between the sexes. Contrary to Defendants' arguments (at 13), Title IX's allowance of sex-separated living facilities in § 1686 is not a narrow "exemption[] from Title IX's general prohibition on sex discrimination." It is not a listed exception from the general non-discrimination mandate, *see* 20 U.S.C. § 1681(a), but reflects a central feature of Title IX (respect for the biological differences between the sexes) and an instruction about how to interpret Title IX, *id.* § 1686. Section 1686 instructs that Title IX shall not "be construed" as prohibiting recipients "from maintaining separate living facilities for the different sexes." *Id.* § 1686. It thus highlights that sex separation in contexts where biological differences matter—*e.g.*, dorms, bathrooms, locker rooms, athletics—is *not* discrimination under Title IX. And it comports with the meaning of *discrimination*. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) ("'less favorable' treatment"); *Bostock*, 590 U.S. at 657 ("worse than others who are similarly situated"). The sexes are not similarly situated in terms of biology so separating them in contexts where physical differences matter does not treat either less favorably.[1] This interpretation is compelled by the statutory text and confirmed by longstanding regulations, precedent, and common sense. *See* Pls. Br. 2–8, 12–15.

Defendants nevertheless insist that sex separation even in contexts like bathrooms can be discrimination. Under the Rule, whether sex separation is discriminatory turns on whether it causes

---

[1] *Cf. United States v. Virginia*, 518 U.S. 515, 533 (1996) ("[p]hysical differences between men and women . . . are enduring"); *id.* at 550 n.19 (noting alterations would be "necessary to afford members of each sex privacy from the other sex"); *L.W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 486 (6th Cir. 2023) ("respecting biological sex differences" is not "stereotyping"); *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 801 (11th Cir. 2022) (en banc) ("[A] sign that says 'men only' looks very different on a bathroom door than a courthouse door." (quotation omitted)); *B.P.J. ex rel. v. W. Va. State Bd. of Educ.*, 98 F.4th 542, 568 (4th Cir. 2024) (Agee, J., concurring and dissenting in part) (explaining a biological boy who identifies as a girl is not similarly situated to a biological girl).

"more than de minimis harm," Defs.' Br. 12, which it does (according to the Rule) when a man who claims a female gender identity is barred from a girls' bathroom, 89 Fed. Reg. at 33,818.[2] This logically incoherent interpretation rewrites the statutory text and, by disregarding the enduring reality of biological differences, erodes the justification that permits sex separation in any context (including dorms, locker rooms, and athletics). Defendants claim (at 15) the Rule is not inconsistent because it merely recognizes that sex-based classifications are not harmful in "certain contexts," but are harmful "in other contexts." But that is not the Rule's position. The Rule takes contrary positions regarding whether sex separation is harmful in the *same* contexts (*e.g.*, bathrooms).

Defendants next argue (at 7–9) that Title VII's causation standard ("because of . . . sex") is "indistinguishable from" Title IX's ("on the basis of sex") and thus, Plaintiffs are wrong to rely on differences in the statutes' causation language to argue that *Bostock* is inapplicable.[3] But even if that were right, *Bostock* would still be inapplicable because (as Plaintiffs explained at 15–16): (1) the Supreme Court said so, explicitly limiting the opinion to Title VII and the specific question (refusing to "prejudge" even whether sex-specific bathrooms were permissible under Title VII, 590 U.S. at 681); (2) the statutes differ "in important respects," including that Title IX requires differential treatment related to athletics and allows sex-specific facilities, *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021),[4] and (3) the employment context differs from the educational context.

In any event, *Bostock*'s reasoning provides no support for defining discrimination based on biological sex to include discrimination based on other grounds, including gender identity. *See* Pls.'

---

[2] Contrary to Defendants' allegations (at 12), Plaintiffs do not think that it causes "more than de minimis harm" to treat persons in accordance with their biological sex. Indeed, Plaintiffs even cited evidence that treating children consistently with their self-professed gender identity "can be harmful to a child's mental health" and "a pathway to dangerous medical procedures." Pls.' Br. 29.

[3] Plaintiffs did not "fail to acknowledge," Defs.' Br. 10, but rather highlighted that *Bostock* "assumed 'sex' in Title VII meant 'biological distinctions between male and female,'" Pls.' Br. 15.

[4] In contrast, Title VII announces that sex is "not relevant to the selection, evaluation, or compensation of employees." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989) (plurality op.).

3

Br. 15. Defendants accordingly resort to quoting dicta from *Bostock* in a misleading fashion. But, as Plaintiffs already explained, *Bostock* addressed a situation where men were fired because of "traits or actions" (being attracted to men or presenting as a woman) that the employer tolerates in women. 590 U.S. at 660. In contrast, "a religious student group would not be considering sex at all if it excluded students who are bisexual or students who claim a nonbinary gender identity from membership." Pls.' Br. 15. Defendants claim (at 10) that this hypothetical is akin to an employer firing a woman for "being insufficiently feminine" and a man for "being insufficiently masculine." That is wrong. In Plaintiffs' hypothetical, the group does not tolerate the *same* traits—(a) being attracted to both sexes or (b) claiming a nonbinary gender identity—regardless of the excluded person's sex. Because the trait that is not "tolerated" in the hypothetical is identical for both sexes, Title IX has "nothing to say" based on *Bostock*. *See* 590 U.S. at 660. The Rule is thus contrary to law and Defendants' tortured interpretation of Title IX and *Bostock* cannot save it.

### 2. The Rule's harassment standard is contrary to Title IX and the First Amendment.

Plaintiffs also showed the Rule's harassment standard is unmoored from the statutory text, relying on *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), and will compel recipients to violate First Amendment rights. *See* Pls.' Br. 16–19. Defendants failed to refute either argument.

First, Defendants insist (at 21) *Davis* is irrelevant because it was a private damages action. But that is no reason to reject *Davis*'s conclusions regarding what Title IX's terms mean. *Davis* held—based on the statutory language—that harassment must rise to a certain level to constitute "discrimination" that arises "under" the recipient's program or activity.[5] The Rule thus disregards Title IX's textual

---

[5] *See, e.g.*, *Davis*, 526 U.S. at 644 ("The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs."); *id.* at 652 ("Moreover, the provision that the discrimination occur 'under any education program or activity' suggests that the behavior be serious enough to have the systemic effect of denying the victim equal access to an educational program or activity.").

limitations, including by requiring recipients to monitor behavior *outside* of their programs to assess whether it contributes to the allegedly hostile environment within their programs. Pls.' Br. 11, 16.

Second, Defendants argue First Amendment concerns are overblown and point to the Rule's disclaimers that it does not violate First Amendment rights. But the Rule's self-serving statements that it does not violate constitutional rights do not make it so, especially when the Rule concludes that what it terms "harassment" is not protected speech. *See* 89 Fed. Reg. at 33,504. And contrary to Defendants' claim (at 26), Plaintiffs do not speculate about "extreme hypothetical applications," but rather discuss run-of-the-mill applications of the Rule that will chill and infringe First Amendment rights. Indeed, Defendants rightly do not dispute that the Rule requires teachers to report and recipients to respond to what *may* be harassment. Pls.' Br. 16. This will dramatically chill speech given the Rule's unlawful expansion of "sex discrimination" to include harassment based on other grounds. Pls.' Br. 10–11, 16–17. Recipients will thus be required to censor and report a remarkable amount of protected speech, including pronoun usage and religious and philosophical views about humanity. *Id.*

Although Defendants dispute that the Rule "prohibits students from expressing their views, including religious views, on numerous topics," Defs.' Br. 26 (quoting Pls.' Br. 17), they do not dispute that the Rule requires "staff and students to use whatever pronouns a person demands," Pls.' Br. 17. This indicates that Defendants wrongly assume that prohibiting the use of certain pronouns expresses no view—an assumption that the Sixth Circuit has rightly rejected. *See Meriwether*, 992 F.3d at 506–07. Regardless, Defendants cannot show that Plaintiffs' assertion is inaccurate because the Rule says an accidental, "stray remark" is not harassment. *See* 89 Fed. Reg. at 33,516; Pls.' Ex. 4. Teachers would still need to report that remark (how could they know it is stray?), and recipients would still need to censor unpopular or potentially offensive views that are intentionally expressed. *See* 89 Fed. Reg. at 33,504 (citing cases where students are prohibited from using pronouns that align with classmates' biological sex rather than their gender identity or from wearing shirts expressing that sex is binary).

5

Finally, Defendants suggest that similarities between the Rule's harassment standard and other anti-harassment provisions demonstrate the standard is constitutional.[6] But the case Defendants cite (at 24) does not even mention the First Amendment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). That is clearly insufficient to show the Rule does not compel recipients to violate First Amendment rights, especially when the Supreme Court has not decided whether it is constitutional to allow "purely verbal harassment claims," which "seems self-evidently dubious." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 337 n.16 (5th Cir. 2020). And Defendants have no answer to Plaintiffs' argument that, even assuming Title IX could be construed as authorizing the Rule, this Court is "required to construe [the statute] against authorizing the Final Rule because to do otherwise would raise grave constitutional concerns." *Mexican Gulf Fishing Co. v. U.S. Dep't of Commerce*, 60 F.4th 956, 966 (5th Cir. 2023).

### 3. *Defendants have no authority to rewrite Title IX and decide major questions.*

Defendants lack statutory authority for the Rule, much less the clear authority that is required to decide major questions as the Rule does. Defendants counter this is not a major questions case because (1) the Rule applies the policy decisions that Congress made and (2) *Bostock* was not a major questions case. But courts look at the substance of the agency's action, not whether the agency admits it is deciding a major question. A rule that radically changes the understanding of Title IX that has prevailed for 50 years and will transform our Nation's schools obviously decides major questions. And *Bostock* was not about agency action. It was a statutory interpretation case that disavowed making decisions about sex separation. 590 U.S. at 681. Defendants do not otherwise respond to Plaintiffs' arguments, nor do they dispute the applicability of the federalism canon that requires a clear statement.

---

[6] Defendants also cite cases articulating the standard for overbreadth challenges to statutes. But Defendants do not explain why that standard applies to Plaintiffs' arguments that (1) the First Amendment provides another basis to conclude the Rule is contrary to law and an impermissible interpretation of Title IX, and (2) the Rule violates the Spending Clause requirement by inducing constitutional violations. Regardless, the Rule violates the First Amendment under any standard.

6

### B. The Rule's Conditions Violate the Spending Clause.

Plaintiffs also demonstrated that the Rule violates Spending Clause requirements. *See* Pls.' Br. 19–21. The Rule (1) "imposes conditions that are not unambiguously clear," (2) conflicts with "the federal interest in promoting equal opportunities [for] both sexes" by "depriv[ing] women of opportunities" and "increas[ing] the risk of sexual assault," (3) induces recipients to violate "Free Speech, Free Exercise, Due Process, and parental rights," and (4) is coercive. *Id.* Defendants cherry pick a few arguments to partially address and ignore the rest.[7]

Regarding the first factor, Defendants argue (at 28) the Rule delineates "Title IX's unambiguous prohibition on sex discrimination" based on the text and *Bostock*. But Defendants misinterpret both, and any notion that recipients "could or should have been on notice that [a] policy of separating male and female bathrooms violates Title IX and its precepts is untenable." *Adams*, 57 F.4th at 816. And the Rule's conditions are not unambiguous because the Rule fails to answer basic questions and is inconsistent. *See* Pls.' Br. 20, 23–24. Regarding the second factor, Defendants argue (at 30) the Rule is consistent with Title IX and have no response to Plaintiffs' arguments and evidence the Rule will reduce women's opportunities and increase sexual assault. Defendants respond in a similar fashion regarding the third factor. They insist the Rule is consistent with the First Amendment and do not respond to Plaintiffs' argument that the Rule will induce violations of Due Process and parental rights. Regarding the fourth factor, Defendants suggest (at 29) the threat of terminating federal funding is not coercive because any termination will not occur immediately and "fears of funding loss are pure speculation." But the reason why the Rule is coercive is not that Plaintiffs will lose funding, but that the "threatened loss" of funding gives them no option "but to acquiesce" to the unlawful Rule. *NFIB v. Sebelius*, 567 U.S. 519, 582 (2012) (plurality op.). And

---

[7] Contrary to Defendants' claim (at 27), Plaintiffs do argue Title IX violates the Spending Clause "assuming, arguendo, the Rule is a permissible interpretation of it." Pls.' Br. 19.

7

Plaintiffs offered evidence demonstrating that they stand to lose significant amounts of funding if they refuse to comply. *See, e.g.*, Pls.' Ex. 13 (showing federal funding constitutes as much as 26% of revenue for some of Plaintiff School Boards' districts) Ex. 31 ¶ 3 (13% of Louisiana elementary and secondary funding); Ex. 32 ¶ 3 (18% of Idaho elementary and secondary school funding); Ex. 12.

### C. The Rule is Arbitrary and Capricious.

Plaintiffs provided multiple grounds for concluding the Rule is arbitrary and capricious. Pls.' Br. 22–25. Defendants rebut none of them, as a few examples highlight.

Defendants dispute (at 17) that the Rule failed to properly consider safety and privacy concerns. But Defendants can cite only "conclusory statements" rejecting Plaintiffs' concerns, which "do not constitute adequate agency consideration of an important aspect of a problem." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 473 (5th Cir. 2024). Moreover, Plaintiffs cited evidence (that was in the administrative record) showing the Rule injures privacy interests and will be exploited by sexual predators. *See, e.g.*, Pls.' Ex. 27. Regardless of whether "transgender students pose a safety risk," Defs.' Br. 17, the Rule provides no explanation, much less evidence, to rebut the comments and evidence that the Rule will be exploited by other persons. Nor do Defendants dispute that the Rule requires recipients to allow any male, including adults and school visitors, "who claims a female gender identity to use girls-only bathrooms and locker rooms." Pls.' Br. 22. Defendants also do not dispute that recipients cannot require "documentation of a medical diagnosis" to confirm a person's sincerity. Pls.' Br. 1, 10. At most, Defendants suggest the Rule will not be exploited because recipients can impose nonburdensome requirements, such as "written confirmation" from "the student or student's parent." Defs.' Br. 18. But "written confirmation" from students looking to exploit the Rule is no safeguard, nor does it prevent exploitation of the Rule by non-students.

Defendants also obfuscate rather than rebut Plaintiffs' arguments related to (a) persons who claim a nonbinary gender identity and (b) construction costs. To start, Defendants insist (at 18) the

8

Rule adequately addresses how to treat students asserting a nonbinary identity because recipients may "coordinate with the student, and the student's parent[,] . . . to determine how to best provide the student with safe and nondiscriminatory access to facilities." But saying recipients will figure it out is no answer. Nor does the Rule say what recipients should do when there is disagreement about the "best" way or when students demand a bathroom that is designated for their precise gender identity. The reality is the Rule will require Plaintiffs to undertake construction (1) to provide gender-neutral bathrooms (at the very least) or bathrooms for all the different gender identities and (2) to increase privacy in their facilities. *See* Pls.' Br. 15 n.12, 24–25; Exs. 6, 14–23. Defendants insist (at 18 n.3, 19) that the Rule "does not mean that" and does not require recipients to incur any construction costs, but they cannot explain why Plaintiffs' straightforward application of the Rule is not true. Indeed, Defendants even argue (at 17) that the Rule does not compromise privacy because recipients can provide "single occupancy facilities." And if it causes more than de minimis harm to require persons to use the bathroom that corresponds with their biological sex when their gender identity differs from their biological sex, then that means individuals who claim a nonbinary identity need options other than a girls' bathroom and a boys' bathroom. Defendants' desire to pretend the Rule does not impose construction costs does not make it true.

## II.     Plaintiffs Satisfy the Other Preliminary Relief Factors.

Plaintiffs have also shown (at 25–29) that they will suffer multiple forms of irreparable harm if preliminary relief is not granted and that such relief will not harm Defendants or disserve the public interest. Despite (1) the Rule's own recognition that recipients, such as Plaintiffs, will incur compliance costs, (2) multiple declarations detailing those costs, (3) numerous Fifth Circuit cases reiterating that unrecoverable compliance costs constitute irreparable harm, and (4) no dispute that Plaintiffs' costs will be unrecoverable, Defendants argue (at 34) that Plaintiffs fail to show "compliance costs [that] qualify as irreparable harm." That argument is absurd. *See* Pls. Br. 25–26. The same is true of all

9

Defendants' arguments attempting to deny that Plaintiffs will suffer irreparable harm. Indeed, they do not dispute that the Rule injures Plaintiff States' ability to enact and enforce laws and that the Rule's pressure to change conflicting state laws and school policies qualifies as irreparable harm to Plaintiffs.[8] Defendants instead deflect (at 35) and point to the federal government's purported "significant" harm.

Regarding the equities, Defendants insist that preliminary relief will harm the public's interest in implementing Title IX and preventing sex discrimination. But the Rule flouts Title IX, it does not effectuate it. And Defendants have no answer to how they will be harmed by preliminary relief, when they repeatedly delayed the Rule's issuance, and longstanding regulations will remain in place. Nor do they respond to other arguments that granting relief will further the public interest. Pls.' Br. 28–29.

### III. The Court Should Postpone the Rule's Effective Date or Stay the Rule.

It is necessary and proper for this Court to postpone the Rule's effective date under 5 U.S.C. § 705 or stay the Rule, which will necessarily provide relief beyond the named parties. Pls.' Br. 29–30. Defendants argue this relief is inappropriate, but § 705 expressly authorizes it. Moreover, Defendants provide no reason why postponement (as opposed to stay or vacatur) is improper and disregard Fifth Circuit precedent recognizing that a § 705 stay is proper, *e.g.*, *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016), and that vacatur is the "default," final remedy, *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 859 (5th Cir. 2022). Finally, Defendants' cursory request that the Court tailor any relief fails to provide true guidance on how to craft such relief (especially since the Rule's provisions work together to amplify Plaintiffs' harm) and so can be rejected. *See Texas*, 829 F.3d at 435.

### CONCLUSION

The Court should postpone the Rule's effective date or grant other preliminary relief.

---

[8] Plaintiffs not only flagged existing state laws and school policies that conflict with the Rule, but also bills that have since become laws. *See* La. Rev. Stat. § 9:62 (H.B. 608) (restrooms/changing rooms); Miss. Code § 29-18-1 *et seq.* (S.B. 2753) ("Securing Areas for Females Effectively and Responsibly Act"); *see also* La. Rev. Stat. § 17:2122 (H.B. 121) (awaiting governor's signature) (pronoun use).

| Dated: June 11, 2024 | Respectfully Submitted, |
|---|---|
| | **ELIZABETH B. MURRILL**<br>**Attorney General of Louisiana** |
| | /s/ Tracy Short |
| Donald A. Daugherty, Jr.*<br>  *Senior Counsel, Litigation*<br>Paul Zimmerman*<br>  *Senior Counsel, Policy and Regulation*<br>Martha A. Astor*<br>  *Counsel, Litigation*<br>DEFENSE OF FREEDOM INSTITUTE FOR POLICY STUDIES<br>1455 Pennsylvania Avenue, NW, Suite 400<br>Washington, DC 20004<br>(414) 559-6902<br>Don.Daugherty@dfipolicy.org<br>Paul.Zimmerman@dfipolicy.org<br>Martha.Astor@dfipolicy.org<br><br>*Counsel for Plaintiff States* | J. Benjamin Aguiñaga*<br>  *Solicitor General*<br>Tracy Short (La # 23940)<br>  *Assistant Chief Deputy Attorney General*<br>Autumn Hamit Patterson*<br>  *Special Assistant Solicitor General*<br>OFFICE OF THE LOUISIANA ATTORNEY GENERAL<br>1885 North Third Street<br>Baton Rouge, Louisiana 70802<br>(225) 326-6705<br>aguinagab@ag.louisiana.gov<br>shortt@ag.louisiana.gov<br><br>*Counsel for Plaintiff State of Louisiana, Plaintiff Louisiana Department of Education, and Plaintiff School Boards* |
| **LYNN FITCH**<br>**Attorney General of Mississippi**<br>Scott G. Stewart*<br>  *Solicitor General*<br>Justin L. Matheny*<br>  *Deputy Solicitor General*<br>MISSISSIPPI ATTORNEY GENERAL'S OFFICE<br>P.O. Box 220<br>Jackson, Mississippi 39205<br>(601) 359-3680<br>scott.stewart@ago.ms.gov<br>justin.matheny@ago.ms.gov<br><br>*Counsel for Plaintiff State of Mississippi* | **AUSTIN KNUDSEN**<br>**Attorney General of Montana**<br>Christian B. Corrigan*<br>  *Solicitor General*<br>Peter Torstensen*<br>  *Deputy Solicitor General*<br>MONTANA DEPARTMENT OF JUSTICE<br>215 N. Sanders Street<br>Helena, Montana 59601<br>(406) 444-2707<br>Christian.Corrigan@mt.gov<br>Peter.Torstensen@mt.gov<br><br>*Counsel for Plaintiff State of Montana* |

**RAÚL LABRADOR**
**Attorney General of Idaho**
Alan Hurst*
   *Solicitor General*
Josh Turner*
   *Chief of Constitutional Litigation and Policy*
OFFICE OF THE ATTORNEY GENERAL OF IDAHO
700 W. Jefferson Street, Suite 201
P.O. Box 83720
Boise, Idaho 83720
(208) 334-2400
Alan.Hurst@ag.idaho.gov
Josh.Turner@ago.idaho.gov

*Counsel for Plaintiff State of Idaho*

*\*Admitted Pro Hac Vice or Pro Hac Vice admission application forthcoming*

## CERTIFICATE OF SERVICE

     I hereby certify that, on June 11, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participating attorneys.

                                    */s/ Tracy Short*
                                    Tracy Short