# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

STATE OF LOUISIANA, et al.,

     *Plaintiffs*,

v.

U.S. DEPARTMENT OF EDUCATION, et al.,

     *Defendants*.

Case No. 3:24−CV−00563−TAD−KDM (LEAD)

Case No. 1:24−CV−00567−TAD−JPM (MEMBER)

Chief Judge Terry A. Doughty
Magistrate Judge Kayla D. McClusky

**BRIEF OF AMICI CURIAE NEW JERSEY, CALIFORNIA, PENNSYLVANIA, COLORADO, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, ILLINOIS, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW YORK, OREGON, RHODE ISLAND, VERMONT, AND WASHINGTON IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

INTERESTS OF AMICI CURIAE.................................................................................1

ARGUMENT.................................................................................................................3

    I.    AMICI STATES' EXPERIENCE CONFIRMS THAT THE FINAL
        RULE WILL YIELD BROAD BENEFITS WITHOUT
        COMPROMISING PRIVACY OR SAFETY, OR IMPOSING
        SIGNIFICANT COSTS. ...................................................................................3

        A.    The Final Rule's Benefits Will Not Compromise Student Privacy
            or Safety. ................................................................................................3

        B.    The Final Rule Will Not Impose Significant Compliance Costs. ...............6

        C.    The Final Rule Will Foster Positive Health Outcomes for LGBTQ
            Students.................................................................................................8

    II.    THE FINAL RULE DEFINES "SEX-BASED HARASSMENT" IN A
        WAY THAT EFFECTUATES TITLE IX WITHOUT BURDEN OR
        SURPRISE TO THE STATES. .........................................................................10

    III.    THE FINAL RULE DOES NOT VIOLATE THE SPENDING CLAUSE
         OR OTHER CONSTITUTIONAL PROVISIONS. ...............................................12

CONCLUSION...........................................................................................................13

i

# TABLE OF AUTHORITIES

**CASES**

*Bostock v. Clayton County*, 590 U.S. 644 (2020). .................................................................. 1, 7

*Brown v. Bd. of Educ.*, 347 U.S. 483 (1954)............................................................................. 4

*Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999)........................................................ 11

*Doe v. Miami Univ.*, 882 F.3d 579 (6th Cir. 2018)................................................................... 12

*Feminist Majority Found. v. Hurley,* 911 F.3d 674 (4th Cir. 2018) ........................................... 10

*Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015).................................... 11

*Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60 (1992) ..................................................... 1, 12

*Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998) .................................................. 11

*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020);....................................... 13

*J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 323 F. Supp. 3d 1030 (S.D. In. 2018)................ 13

*Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180 (2021) ........................................................... 3

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617 (2018).......................... 12

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986)........................................................... 12

*Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).............................................................. 1

*Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75 (1998)........................................................ 12

*Roberts v. U. S. Jaycees*, 468 U.S. 609 (1984). .................................................................... 6

*Runyon v. McCrary*, 427 U.S. 160 (1976) .............................................................................. 12

*Tennessee v. U.S. Dep't of Agric.*, 665 F. Supp. 3d 880 (E.D. Tenn. 2023)............................... 13

**FEDERAL STATUTES**

20 U.S.C. § 1681 ................................................................................................................. 1

20 U.S.C. § 1681(a) ........................................................................................................... 1, 11

20 U.S.C. § 1682................................................................................................................. 11

20 U.S.C. § 1686................................................................................................................. 6

**FEDERAL REGULATORY MATERIALS**

*Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) ............................................. 1, 7, 10

Off. of Elementary & Secondary Educ., U.S. Dep't of Educ., *Safe & Supportive Schools* (May 30, 2023), https://tinyurl.com/yv397h94. ................................................................................. 5

Racial Incidents and Harassment Against Students at Educational Institutions; Investigative Guidance, 59 Fed. Reg. 11,448 (Mar. 10, 1994); .......................................................... 11

Russlyn Ali, Assistant Sec'y for Civ. Rts., Off. for Civ. Rts., Dear Colleague Letter (Apr. 4, 2011, withdrawn Sept. 22, 2017) ......................................................................... 11

Sexual Harassment Guidance: Harassment of Students by Sch. Emps., Other Students, or Third Parties, 62 Fed. Reg. 12,034 (Mar. 13, 1997) ................................................................ 11

U.S. Dep't of Educ., *Q&A on Campus Sexual Misconduct* (Sept. 2017, rescinded Aug. 2020).. 12

U.S. Dep't of Educ., *Q&A on Title IX and Sexual Violence* (Apr. 24, 2014, withdrawn Sept. 22, 2017) ................................................................................................................ 12

U.S. Dep't of Educ., Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties (Jan. 2001) ......................................... 11

## STATE STATUTES AND REGULATORY MATERIALS

11 R.I. Gen. Laws § 11-24-2 ........................................................................................... 7

16 Pa. Code § 41.206 ...................................................................................................... 7

28 R.I. Gen. Laws §§ 28-5-6(11), 28-5-7 ..................................................................... 8

34 R.I. Gen. Laws §§ 34-37-3(9), 34-37-4 ................................................................... 8

43 P.S. § 953 ..................................................................................................................... 7

775 Ill. Comp. Stat. 5/1-102(A) ..................................................................................... 7

775 Ill. Comp. Stat. 5/1-103(O-1) ................................................................................. 7

Affirming & Inclusive Schs. Task Force, *Strengthening Inclusion in Illinois Schools* (2020). ..... 6

Assemb. B. 1266, 2013-2014 Sess. (Cal. 2013) ........................................................... 3

Cal. Civ. Code § 51(b), (e)(5) ........................................................................................ 7

Cal. Educ. Code § 220 .................................................................................................... 7

Cal. Educ. Code § 221.5(f) ............................................................................................. 7

Cal. Gov't Code § 12926(o) ........................................................................................... 7

Cal. Gov't Code § 12940(a) ........................................................................................... 7

Cal. Gov't Code § 12949 ................................................................................................. 7

Cal. Gov't Code § 12955 ................................................................................................. 7

Cal. Penal Code § 422.55 ............................................................................................... 7

Cal. Penal Code § 422.56(c) ........................................................................................... 7

Cal. Sch. Bds. Ass'n, Final Guidance: AB 1266, Transgender and Gender Nonconforming
Students, Privacy, Programs, Activities & Facilities 2 (2014) .................................... 5

Colo. Ass'n of Sch. Bds. et al., Guidance for Educators Working with Transgender and Gender
Nonconforming Students (n.d.) .................................................................................. 5

Colo. Rev. Stat. § 24-34-301(7) ...................................................................................... 7

Colo. Rev. Stat. § 24-34-402 ........................................................................................... 7

Colo. Rev. Stat. § 24-34-502 ........................................................................................... 7

Colo. Rev. Stat. § 24-34-601 ........................................................................................... 7

Conn. Gen. Stat. § 10-15c ............................................................................................... 7

Conn. Gen. Stat. § 46a-51(21) ......................................................................................... 7

Conn. Gen. Stat. § 46a-60 ............................................................................................... 7

Conn. Gen. Stat. § 46a-64 ............................................................................................... 7

Conn. Gen. Stat. § 46a-64c .............................................................................................. 7

Conn. Safe Sch. Coal., Guidelines for Connecticut Schools to Comply with Gender Identity and
Expression Non-Discrimination Laws (2012). ........................................................... 5

D.C. Code § 2-1401.02(12A-i) ........................................................................................ 8

D.C. Code § 2-1402.11 .................................................................................................... 8

D.C. Code § 2-1402.21 .................................................................................................... 8

D.C. Code § 2-1402.31 .................................................................................................... 8

D.C. Code § 2-1402.41 .................................................................................................... 8

D.C. Pub. Schs., Transgender and Gender-Nonconforming Policy Guidance (2015).................... 6

Del. Code Ann. tit. 19, § 711 .......................................................................................... 7

Del. Code Ann. tit. 6, § 4501 .......................................................................................... 7

Del. Code Ann. tit. 6, § 4603(b) ...................................................................................... 7

Haw. Rev. Stat. § 302A-461 ............................................................................................ 7

Haw. Rev. Stat. § 368D-1 ............................................................................................... 7

Haw. Rev. Stat. § 489-2 ................................................................................................ 7

Haw. Rev. Stat. § 489-3 ................................................................................................ 7

Haw. Rev. Stat. § 515-2 ................................................................................................ 7

Haw. Rev. Stat. § 515-3 ................................................................................................ 7

Ill. Dep't of Hum. Rts., Non-Regulatory Guidance: Relating to Protection of Transgender,
   Nonbinary, and Gender Nonconforming Students Under the Illinois Human Rights Act (2021)
   .................................................................................................................................. 5

Ill. State Bd. of Educ., Non-Regulatory Guidance: Supporting Transgender, Nonbinary and
   Gender Nonconforming Students (2020) .................................................................. 5

Iowa Code § 216.2(10) ................................................................................................. 7

Iowa Code § 216.7 ........................................................................................................ 7

Iowa Code § 216.8 ........................................................................................................ 7

Iowa Code § 216.9 ........................................................................................................ 7

Kan. Hum. Rts. Comm'n, *Kansas Human Rights Commission Concurs with the U.S. Supreme
   Court's* Bostock *Decision* (Aug. 21, 2020) .......................................................... 7

Mass. Dep't of Elementary & Secondary Educ., Guidance for Massachusetts Public Schools:
   Creating a Safe and Supportive School Environment (Oct. 28, 2021) ..................... 6

Mass. Gen. Laws ch. 151B, § 4 .................................................................................... 7

Mass. Gen. Laws ch. 272, §§ 92A, 98 (as amended by Ch. 134, 2016 Mass. Acts) ..... 7

Mass. Gen. Laws ch. 4, § 7 ........................................................................................... 7

Mass. Gen. Laws ch. 76, § 5 ......................................................................................... 7

Md. Code Ann., Educ. § 26-704 .................................................................................... 7

Md. Code Ann., State Gov't § 20-304 ........................................................................... 7

Md. Code Ann., State Gov't § 20-606 ........................................................................... 7

Md. Code Ann., State Gov't § 20-705 ........................................................................... 7

Md. State Dep't of Educ., Providing Safe Spaces for Transgender and Gender Non-Conforming
   Youth: Guidelines for Gender Identity Non-Discrimination (2015) ........................ 6

Me. Rev. Stat. Ann. tit. 5, § 4553(9-C) ........................................................................ 7

Me. Rev. Stat. Ann. tit. 5, § 4571 ................................................................................. 7

Me. Rev. Stat. Ann. tit. 5, § 4581 ................................................................................. 7

Me. Rev. Stat. Ann. tit. 5, § 4591 ................................................................................. 7

Me. Rev. Stat. Ann. tit. 5, § 4601 ................................................................................. 7

Mich. Dep't of Educ., State Board of Education Statement and Guidance on Safe and Supportive
    Learning Environments for Lesbian, Gay, Bisexual, Transgender, and Questioning (LGBTQ)
    Students (2016). ......................................................................................................... 6

Minn. Dep't of Educ., A Toolkit for Ensuring Safe and Supportive Schools for Transgender and
    Gender Nonconforming Students (2017) ................................................................... 6

Minn. Stat. § 363A.03(44) ............................................................................................. 7

Minn. Stat. § 363A.08 ................................................................................................... 7

Minn. Stat. § 363A.11 ................................................................................................... 7

Minn. Stat. § 363A.13 ................................................................................................... 7

N.H. Rev. Stat. Ann. § 354-A:16 .................................................................................. 7

N.H. Rev. Stat. Ann. § 354-A:2(XIV-e) ....................................................................... 7

N.H. Rev. Stat. Ann. § 354-A:27 .................................................................................. 7

N.H. Rev. Stat. Ann. § 354-A:6 .................................................................................... 7

N.H. Rev. Stat. Ann. § 354-A:8 .................................................................................... 7

N.J. Stat. Ann. § 10:5-12 .............................................................................................. 7

N.J. Stat. Ann. § 10:5-5(rr) ........................................................................................... 7

N.J. Stat. Ann. § 18A:36-41 ......................................................................................... 7

N.J. Stat. Ann. § 28-1-7(A) .......................................................................................... 7

N.J. Stat. Ann. § 28-1-7(F) ........................................................................................... 7

N.J. Stat. Ann. § 28-1-7(G) .......................................................................................... 7

N.J. State Dep't of Educ., Transgender Student Guidance for School Districts (2018). ............... 6

N.M. Stat. Ann. § 28-1-2(Q) ........................................................................................ 7

N.Y. Exec. Law §§ 291, 296 ......................................................................................... 7

N.Y. State Educ. Dep't, Creating a Safe, Supportive, and Affirming School Environment for
    Transgender and Gender Expansive Students: 2023 Legal Update and Best Practices (June
    2023). ......................................................................................................................... 6

Nev. Rev. Stat. §§ 118.075 ........................................................................................... 7

Nev. Rev. Stat. §§ 613.310(4), 613.330 ....................................................................... 7

Nev. Rev. Stat. §§ 651.050(2), 651.070 .................................................................... 7

Or. Dep't of Educ., Supporting Gender Expansive Students: Guidance for Schools (2023). ........ 6

Or. Rev. Stat. § 174.100(4) ...................................................................................... 7

Or. Rev. Stat. § 659.850 ........................................................................................... 7

Or. Rev. Stat. § 659A.006 ......................................................................................... 7

R.I. Dep't of Educ., Guidance for Rhode Island Schools on Transgender and Gender
Nonconforming Students (2016) ............................................................................ 6

Utah Code Ann. § 34A-5-106 .................................................................................... 8

Utah Code Ann. § 57-21-5 ........................................................................................ 8

Vt. Agency of Educ., Continuing Best Practices for Schools Regarding Transgender and Gender
Nonconforming Students (2017) ............................................................................ 6

Vt. Stat. Ann. tit. 1, § 144 ....................................................................................... 8

Vt. Stat. Ann. tit. 21, § 495 ..................................................................................... 8

Vt. Stat. Ann. tit. 9, § 4502 ..................................................................................... 8

Vt. Stat. Ann. tit. 9, § 4503 ..................................................................................... 8

Wash. Rev. Code Ann. § 28A.642.010 ......................................................................... 8

Wash. Rev. Code Ann. § 49.60.030(1)(a)-(e) ................................................................. 8

Wash. Rev. Code Ann. § 49.60.040(27) ....................................................................... 8

Wash. Rev. Code Ann. § 49.60.180 ............................................................................. 8

Wash. Rev. Code Ann. § 49.60.215 ............................................................................. 8

Wash. Rev. Code Ann. § 49.60.222 ............................................................................. 8

## OTHER AUTHORITIES

Alberto Arenas et al., *7 Reasons for Accommodating Transgender Students at School*, Phi Delta
Kappa (Sept. 1, 2016) ....................................................................................... 5

Alexa Ura, *For Transgender Boy, Bathroom Fight Just Silly*, Tex. Trib. (June 14, 2016),
https://tinyurl.com/mtpescst ............................................................................... 3

Beatriz Pagliarini Bagagli et al., *Trans Women and Public Restroots: The Legal Discourse and
Its Violence*, 6 Frontiers Socio. 1 (Mar. 31, 2021) .................................................... 5

Br. of Amici Curiae Sch. Adm'rs from Thirty-One States & D.C. in Supp. of Resp't, *Gloucester
Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 1239 (2017) (No. 16-273), 2017 WL 930055.
.................................................................................................................... 4, 5

Christy Mallory et al., Williams Inst., *Impact of Stigma and Discrimination (Michigan)* (2019) . 8

Crosby Burns et al., Ctr. for Am. Progress & AFSCME, *Gay and Transgender Discrimination in the Public Sector: Why It's a Problem for State and Local Governments, Employees, and Taxpayers* (2012) .................................................................................................................. 8

Ctrs. For Disease Control, Youth Risk Behavior Survey: Data Summary & Trends Report 2011-2021 (2023), https://tinyurl.com/2p6w6yrv. ............................................................................ 12

Emily A. Greytak et al., GLSEN, *Harsh Realities: The Experiences of Transgender Youth in Our Nation's Schools* (2009)............................................................................................................. 9

Human Rts. Campaign Found., *2023 LGBTQ+ Youth Report* (2023). ........................................ 9

Jenna Howard Terrell et al., *Conceptualizing and Measuring Safe and Supportive Schools*, 24 Contemp. Sch. Psych. 3 (Aug. 2020) ....................................................................................... 12

Joseph G. Kosciw et al., GLSEN, *The 2015 National School Climate Survey: The Experiences of Lesbian, Gay, Bisexual, Transgender, and Queer Youth in Our Nation's Schools* (2016), https://tinyurl.com/5av274d3 ................................................................................................... 4

Joseph G. Kosciw et al., GLSEN, *The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* (2022), https://tinyurl.com/2aabcfe4 ................... 3, 4

*Joseph G. Kosciw, GLSEN, The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* (2022). ...................................................................... 9

Kristina R. Olson et al., *Mental Health of Transgender Children Who Are Supported in Their Identities*, 137 Pediatrics e20153223 (Mar. 2016)..................................................................... 4

Kristina R. Olson et al., *Mental Health of Transgender Children Who Are Supported in Their Identities*, Pediatrics, Mar. 2016 ............................................................................................ 10

Linda Darling-Hammond et al., *Implications for Educational Practice of the Science of Learning and Development*, 24 *Applied Dev. Sci.* 97-98 (Feb. 17, 2019), https://tinyurl.com/5f97nkbx. 4, 8, 12

Michelle M. Johns et al., *Transgender Identity and Experiences of Violence Victimization, Substance Use, Suicide Risk, and Sexual Risk Behaviors Among High School Students—19 States and Large Urban School Districts, 2017*, 68 Morbidity & Mortality Wkly. Rep. 67 (2019), https://tinyurl.com/bdf64cbs. .................................................................................... 9

Movement Advancement Project, *Local Nondiscrimination Ordinances*, https://tinyurl.com/59p55bap (current as of Jan. 1, 2023). ....................................................... 8

Sandy E. James et al., Nat'l Ctr. for Transgender Equal., *The Report of the 2015 U.S. Transgender Survey* (Dec. 2016). ............................................................................................. 9

*Separation and Stigma: Transgender Youth and School Facilities*, Movement Advancement Project & GLSEN (2017), https://tinyurl.com/ukvkv8tf ........................................................ 9

Stephen Russell et al., *Chosen Name Use Is Linked to Reduced Depressive Symptoms, Suicidal Ideation, and Suicidal Behavior Among Transgender Youth*, J. of Adolescent Health 503 (2018)....................................................................................................................................... 10

Susanne Beauchaine et al., *Prohibiting Discrimination in Washington Public Schools* (Wash. Off. of Superintendent of Pub. Instruction 2012), https://tinyurl.com/yk26eb96...................... 5

*The Trevor Project Research Brief: LGBTQ & Gender-Affirming Spaces*, The Trevor Project (Dec. 2020), https://tinyurl.com/2c2p7zkf............................................................................ 10

The Trevor Project, *2023 U.S. National Survey on the Mental Health of LGBTQ Young People* (2023), https://tinyurl.com/mvbmabrw ............................................................................... 3, 9

World Professional Association for Transgender Health, *Standards of Care for the Health of Transgender and Gender Diverse People*, Version 8, Int'l J. of Transgender Health S107 (Sept. 2022)............................................................................................................................. 10

## INTRODUCTION

In defining sex discrimination to include discrimination based on sexual orientation or gender identity, the U.S. Department of Education's ("ED") new final rule, *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 89 Fed. Reg. 33,474 (Apr. 29, 2024) ("Final Rule"), is consistent with the plain text of Title IX of the Education Amendments Act of 1972 ("Title IX"), 20 U.S.C. § 1681, Supreme Court precedent, decisions in at least eight circuits, and congressional intent.

Title IX broadly prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174-75 (2005) (emphasizing "repeated holdings construing 'discrimination' under Title IX broadly"). The Supreme Court, and many circuit courts, interpret Title IX in light of Title VII. *E.g.*, *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 616 n.1 (1999) (Thomas, J., dissenting) (citing *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992)). Thus, given "the straightforward application of legal terms with plain and settled meanings," a prohibition on sex discrimination also covers discrimination based on being part of the lesbian, gay, bisexual, transgender, or queer (LGBTQ) community. *Bostock v. Clayton County*, 590 U.S. 644, 662 (2020).

Because the Final Rule comports with Title IX and the U.S. Constitution, and better enables states to advance their compelling interests in preventing harassment and discrimination and protecting students from harm, Amici Curiae States ("Amici States") submit the instant brief in support of ED's opposition to Plaintiffs' motion for a preliminary injunction.

## INTERESTS OF AMICI CURIAE

Amici States have compelling governmental interests in the robust enforcement of Title IX to ensure that our schools operate free from sex discrimination. As sovereign jurisdictions charged

with enforcing state antidiscrimination laws and shaping school policies that foster a safe and supportive environment for all students, Amici States take the implementation of Title IX regulations seriously. Sex discrimination and harassment based on sexual orientation or gender identity, and sex stereotypes imposed on LGBTQ individuals, cause direct economic, physical, and emotional harms to students. To prevent these tangible injuries, Amici States have adopted laws and policies that combat sex discrimination against students on the basis that they appear, act, and identify as a sex different from their sex assigned at birth, or that they are attracted to someone of the same sex.

As Amici States' experience demonstrates, preventing sex-based discrimination, protecting against sexual harassment, and ensuring equal access to educational opportunities for all students confer wide societal benefits without imposing substantial costs on schools or compromising student privacy or safety. The same is true under the Final Rule, which includes explicit protections for LGBTQ students and rectifies the harm caused to our schools and communities through ED's prior rule ("2020 Rule"). The 2020 Rule undermined Title IX's nondiscrimination mandate by arbitrarily narrowing the scope of Title IX's sexual harassment protections.

Amici States submit this brief to demonstrate, in sovereign states' unique experience, how discrimination and exclusion on the basis of sex cause direct economic, physical, and emotional harms to our students, their communities, and their states and society as a whole, and that the balance of equities and public interest cut against the extraordinary relief Plaintiffs seek. Amici States encourage the Final Rule's full implementation nationwide.

**ARGUMENT**

## I.   AMICI STATES' EXPERIENCE CONFIRMS THAT THE FINAL RULE WILL YIELD BROAD BENEFITS WITHOUT COMPROMISING PRIVACY OR SAFETY, OR IMPOSING SIGNIFICANT COSTS.

States have a responsibility to provide public education, which encompasses a concomitant duty to protect students from harm. *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 189-90 (2021). The Final Rule will promote states' efforts to protect students from harm—in part by clarifying that Title IX protections against sex discrimination include protections for LGBTQ students—and will provide broad, significant benefits to LGBTQ students nationwide, without compromising student privacy or safety, and without imposing substantial costs to our schools.

### A.   The Final Rule's Benefits Will Not Compromise Student Privacy or Safety.

Amici States' experience demonstrates that policies allowing students to use facilities consistent with their gender identity significantly benefit those students without risking student privacy or safety. For example, allowing students to use bathrooms consistent with their gender identity safeguards against harms common to transgender students, such as students foregoing drinking or eating during the school day to avoid using the restroom for fear of exclusion, reprimand, or bullying.[1]

In contrast, subjecting LGBTQ students to such discrimination and harassment, including by barring transgender students from facilities consistent with their gender identify, significantly harms LGBTQ students.[2] For example, one 2021 survey showed that LGBTQ students who experienced discrimination in their schools were almost three times as likely (43.3% versus 16.4%)

---

[1] *See* Assemb. B. 1266, 2013-2014 Sess. (Cal. 2013); Alexa Ura, *For Transgender Boy, Bathroom Fight Just Silly*, Tex. Trib. (June 14, 2016), https://tinyurl.com/mtpescst. *See also* The Trevor Project, *2023 U.S. National Survey on the Mental Health of LGBTQ Young People* 5 (2023), https://tinyurl.com/mvbmabrw (noting approximately half of transgender and nonbinary youth reported in 2023 having seriously considered suicide in the past twelve months).

[2] Joseph G. Kosciw et al., GLSEN, *The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* xix, 36 (2022), https://tinyurl.com/2aabcfe4.

to have missed school because they felt unsafe or uncomfortable.[3] LGBTQ students who experienced discriminatory policies and practices also had lower grade point averages and educational achievement, lower levels of educational aspiration, lower self-esteem and higher levels of depression than other students who had not encountered such discrimination.[4]

While discriminatory environments that cause fear and anxiety weaken a child's cognitive capacity and disrupt effective learning, safe and supportive school environments allow students to develop positive relationships, regulate their emotions and behavior, and maintain their physical, psychological, and academic well-being.[5] Accordingly, transgender students, when allowed to use school bathroom and locker room facilities consistent with their gender identity, experience better mental health outcomes that are more comparable to their cisgender peers.[6] Providing equal access to facilities that align with one's gender identity—in accordance with the Final Rule—promotes these positive outcomes and helps reduce the harms that LGBTQ students face. This, in turn, benefits society as a whole, since equal education better prepares students to contribute to society, culturally and economically. *Cf. Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954).

Amici States' experience also demonstrates that allowing transgender students access to facilities that correspond with their gender identity does not result in increased privacy or safety

---

[3] *Id.* at 36.

[4] *Id.* at 42, 45; Joseph G. Kosciw et al., GLSEN, *The 2015 National School Climate Survey: The Experiences of Lesbian, Gay, Bisexual, Transgender, and Queer Youth in Our Nation's Schools* xviii, 53-54 (2016) ("2015 NSC Survey"), https://tinyurl.com/5av274d3.

[5] Linda Darling-Hammond et al., *Implications for Educational Practice of the Science of Learning and Development*, 24 *Applied Dev. Sci.* 97-98, 102 (Feb. 17, 2019), https://tinyurl.com/5f97nkbx.

[6] *See* Kristina R. Olson et al., *Mental Health of Transgender Children Who Are Supported in Their Identities*, 137 Pediatrics e20153223, at 5-7 (Mar. 2016); Br. of Amici Curiae Sch. Adm'rs from Thirty-One States & D.C. in Supp. of Resp't at 4 [hereinafter Br. of Amici Curiae Sch. Adm'rs], *Gloucester Cnty. Sch. Bd. v. G.G. ex rel. Grimm*, 137 S. Ct. 1239 (2017) (No. 16-273), 2017 WL 930055.

concerns in public schools, or specific instances of transgender students harassing others when using restrooms or locker rooms consistent with their gender identity.[7] The experience of school administrators in thirty-one states and the District of Columbia demonstrates that gender-identity-based protections in bathroom- and locker room-use policies result in no public safety or privacy risks, nor is there evidence that students pose as transgender to gain improper restroom access.[8]

The Final Rule affords ample flexibility for our schools to implement policies to address privacy concerns, and Amici States have already increased privacy options for all students in a cost-effective manner without singling out any one student. For example, in Washington, where districts must allow students to use the restroom or locker room consistent with their gender identity, schools must provide any student "who has a need or desire for increased privacy, regardless of the underlying reason," with "access to an alternative restroom (e.g., staff restroom . . .)," "a reasonable alternative changing area, such as the use of a private area (e.g., a nearby restroom stall with a door), or a separate changing schedule."[9] At least twelve other states and the District of Columbia offer comparable guidance to ensure that school districts can comply with nondiscrimination policies and privacy concerns.[10] Solutions range from offering privacy

---

[7] *See* Alberto Arenas et al., *7 Reasons for Accommodating Transgender Students at School*, Phi Delta Kappa (Sept. 1, 2016); Beatriz Pagliarini Bagagli et al., *Trans Women and Public Restrooms: The Legal Discourse and Its Violence*, 6 Frontiers Socio. 1, 8 (Mar. 31, 2021).

[8] *See* Br. of Amici Curiae Sch. Adm'rs at 14-16; Off. of Elementary & Secondary Educ., U.S. Dep't of Educ., *Safe & Supportive Schools* (May 30, 2023), https://tinyurl.com/yv397h94.

[9] *See* Susanne Beauchaine et al., *Prohibiting Discrimination in Washington Public Schools* 30-31 (Wash. Off. of Superintendent of Pub. Instruction 2012), https://tinyurl.com/yk26eb96.

[10] **California**: Cal. Sch. Bds. Ass'n, Final Guidance: AB 1266, Transgender and Gender Nonconforming Students, Privacy, Programs, Activities & Facilities 2 (2014). **Colorado**: Colo. Ass'n of Sch. Bds. et al., Guidance for Educators Working with Transgender and Gender Nonconforming Students 4-5 (n.d.). **Connecticut**: Conn. Safe Sch. Coal., Guidelines for Connecticut Schools to Comply with Gender Identity and Expression Non-Discrimination Laws 9-10 (2012). **Illinois**: Ill. Dep't of Hum. Rts., Non-Regulatory Guidance: Relating to Protection of Transgender, Nonbinary, and Gender Nonconforming Students Under the Illinois Human Rights Act 6-7 (2021); Ill. State Bd. of Educ., Non-Regulatory Guidance: Supporting Transgender, Nonbinary and Gender Nonconforming Students 10-11 (2020); Affirming & Inclusive Schs. Task

curtains to separate restroom and changing rooms to all who desire them, none of which require costly construction or remodeling.

Maintaining sex-separated spaces while allowing transgender students to use facilities that align with their gender identity results in positive educational and health outcomes for students, and promotes Amici States' compelling interest in "removing the barriers to economic advancement and political and social integration that have historically plagued certain disadvantaged groups." *Roberts v. U. S. Jaycees*, 468 U.S. 609, 626 (1984). Equal access to facilities that align with gender identity is therefore not only consistent with Title IX's provision for sex-separated facilities, 20 U.S.C. § 1686, but also consonant with the constitutional guarantee that education be "made available to *all* on equal terms," *Brown*, 347 U.S. at 493 (emphasis added).

### B.    The Final Rule Will Not Impose Significant Compliance Costs.

Plaintiffs grossly overstate the expense of updating policies and procedures, training, and construction, arguing that compliance with the Final Rule will inflict irreparable harm on the states and their school systems. Amici States' experience confirms that these concerns are unfounded. Plaintiffs fail to note that every state is already required to prohibit discrimination based on

---

Force, *Strengthening Inclusion in Illinois Schools* 19-21 (2020). **Maryland**: Md. State Dep't of Educ., Providing Safe Spaces for Transgender and Gender Non-Conforming Youth: Guidelines for Gender Identity Non-Discrimination 13-14 (2015). **Massachusetts**: Mass. Dep't of Elementary & Secondary Educ., Guidance for Massachusetts Public Schools: Creating a Safe and Supportive School Environment (Oct. 28, 2021). **Michigan**: Mich. Dep't of Educ., State Board of Education Statement and Guidance on Safe and Supportive Learning Environments for Lesbian, Gay, Bisexual, Transgender, and Questioning (LGBTQ) Students 5-6 (2016). **Minnesota**: Minn. Dep't of Educ., A Toolkit for Ensuring Safe and Supportive Schools for Transgender and Gender Nonconforming Students 10 (2017). **New Jersey**: N.J. State Dep't of Educ., Transgender Student Guidance for School Districts 7 (2018). **New York**: N.Y. State Educ. Dep't, Creating a Safe, Supportive, and Affirming School Environment for Transgender and Gender Expansive Students: 2023 Legal Update and Best Practices 22-24 (June 2023). **Oregon**: Or. Dep't of Educ., Supporting Gender Expansive Students: Guidance for Schools 24-26 (2023). **Rhode Island**: R.I. Dep't of Educ., Guidance for Rhode Island Schools on Transgender and Gender Nonconforming Students 8-9 (2016). **Vermont**: Vt. Agency of Educ., Continuing Best Practices for Schools Regarding Transgender and Gender Nonconforming Students 6, 8 (2017). **District of Columbia**: D.C. Pub. Schs., Transgender and Gender-Nonconforming Policy Guidance 9 (2015).

LGBTQ identity for all employees in its school districts under Title VII. *See Bostock*, 590 U.S. at 659-62. Training staff members and implementing policies, so that the same protections extend to all students at risk of discrimination or harassment on the basis of sex under Title IX, is not a "significant expenditure[]," as compared to the "construction of new facilities or creation of new programs." 89 Fed. Reg. at 33,876; *see also id.* at 33,862-77 (noting benefits "far outweigh" costs). Further, at least twenty-three states and the District of Columbia, [11] and at least 374

---

[11] **California**: Cal. Civ. Code § 51(b), (e)(5) (public accommodations); Cal. Educ. Code §§ 220 (education), 221.5(f) (education and school athletic participation); Cal. Gov't Code §§ 12926(o), (r)(2), 12940(a), 12949 (employment); *id.* § 12955 (housing); Cal. Penal Code §§ 422.55, 422.56(c) (hate crimes). **Colorado**: Colo. Rev. Stat. § 24-34-301(7) (definition); *id.* § 24-34-402 (employment); *id.* § 24-34-502 (housing); *id.* § 24-34-601 (public accommodations). **Connecticut**: Conn. Gen. Stat. § 10-15c (schools); *id.* § 46a-51(21) (definition); *id.* § 46a-60 (employment); *id.* § 46a-64 (public accommodations); *id.* § 46a-64c (housing). **Delaware**: Del. Code Ann. tit. 6, § 4501 (public accommodations); *id.* tit. 6, § 4603(b) (housing); *id.* tit. 19, § 711 (employment). **Hawaiʻi**: Haw. Rev. Stat. § 368D-1 (education); *id.* § 302A-461 (school athletics); *id.* § 489-2 (definition); *id.* § 489-3 (public accommodations); *id.* § 515-2 (definition); *id.* § 515-3 (housing). **Illinois**: 775 Ill. Comp. Stat. 5/1-102(A) (housing, employment, access to financial credit, public accommodations); *id.* 5/1-103(O-1) (definition). **Iowa**: Iowa Code § 216.2(10) (definition); *id.* § 216.6 (employment); *id.* § 216.7 (public accommodations); *id.* § 216.8 (housing); *id.* § 216.9 (education). **Kansas**: Kan. Hum. Rts. Comm'n, *Kansas Human Rights Commission Concurs with the U.S. Supreme Court's* Bostock *Decision* (Aug. 21, 2020) (advising that Kansas laws prohibiting discrimination based on "sex" in "employment, housing, and public accommodation" contexts "are inclusive of LGBTQ and all derivates of 'sex'"). **Maine**: Me. Rev. Stat. Ann. tit. 5, § 4553(9-C) (definition); *id.* § 4571 (employment); *id.* § 4581 (housing); *id.* § 4591 (public accommodations); *id.* § 4601 (education). **Maryland**: Md. Code Ann., State Gov't § 20-304 (public accommodations); *id.* § 20-606 (employment); *id.* § 20-705 (housing); Md. Code Ann., Educ. § 26-704 (schools). **Massachusetts**: Mass. Gen. Laws ch. 4, § 7, fifty-ninth (definition); *id.* ch. 76, § 5 (education); *id.* ch. 151B, § 4 (employment, housing, credit); *id.* ch. 272, §§ 92A, 98 (public accommodations) (as amended by Ch. 134, 2016 Mass. Acts). **Minnesota**: Minn. Stat. § 363A.03(44) (definition); *id.* § 363A.08 (employment); *id.* § 363A.09 (housing); *id.* § 363A.11 (public accommodations); *id.* § 363A.13 (education). **Nevada**: Nev. Rev. Stat. §§ 118.075, 118.100 (housing); *id.* §§ 613.310(4), 613.330 (employment); *id.* §§ 651.050(2), 651.070 (public accommodations). **New Hampshire**: N.H. Rev. Stat. Ann. § 354-A:2(XIV-e) (definition); *id.* § 354-A:6 (employment); *id.* § 354-A:8 (housing); *id.* § 354-A:16 (public accommodations); *id.* § 354-A:27 (education). **New Jersey**: N.J. Stat. Ann. § 10:5-5(rr) (definition); *id.* § 10:5-12 (public accommodations, housing, employment); *id.* § 18A:36-41 (directing issuance of guidance to school districts permitting transgender students "to participate in gender-segregated school activities in accordance with the student's gender identity"). **New Mexico**: N.M. Stat. Ann. § 28-1-2(Q) (definition); *id.* § 28-1-7(A) (employment); *id.* § 28-1-7(F) (public accommodations); *id.* § 28-1-7(G) (housing). **New York**: N.Y. Exec. Law §§ 291, 296 (education, employment, public accommodations, housing). **Oregon**: Or. Rev. Stat. § 174.100(4) (definition); *id.* § 659.850 (education); *id.* § 659A.006 (employment, housing, public accommodations). Pennsylvania: 43 P.S. § 953; 16 Pa. Code § 41.206 (defining sex to include gender identity). **Rhode Island**: 11 R.I. Gen. Laws § 11-24-2 (public accommodations); 28 R.I. Gen. Laws §§ 28-5-6(11),

municipalities,[12] already offer express protections against discrimination based on LGBTQ identity in areas such as education, housing, public accommodations, and employment—all demonstrating that the Final Rule's protections are entirely feasible. A return to the 2020 Rule's regulatory scheme would result in weighty costs to the students who are denied protections under Title IX, including increased costs from absenteeism and student dropouts, as well as unemployment and health service costs that redound to states when students experience un-remediated incidents of discrimination and harassment.[13]

**C.    The Final Rule Will Foster Positive Health Outcomes for LGBTQ Students.**

LGBTQ students suffer concrete harms when they are denied Title IX's protection against discrimination and severe or pervasive harassment in schools, including greater risk of mental health issues and worse educational outcomes. Indeed, neuroscience research and developmental studies indicate that a child's social, emotional, and academic development is closely related to educational environment,[14] and negative effects of discrimination and harassment can impede a child's cognitive development, disrupt the learning process, and endanger psychological well-

---

28-5-7 (employment); 34 R.I. Gen. Laws §§ 34-37-3(9), 34-37-4 (housing). **Utah**: Utah Code Ann. § 34A-5-106 (employment); *id.* § 57-21-5 (housing). **Vermont**: Vt. Stat. Ann. tit. 1, § 144 (definition); *id.* tit. 9, § 4502 (public accommodations); *id.* tit. 9, § 4503 (housing); *id.* tit. 21, § 495 (employment). **Washington**: Wash. Rev. Code Ann. § 28A.642.010 (education); *id.* § 49.60.030(1)(a)-(e) (employment, public accommodations, real estate transactions, credit transactions, and insurance transactions); *id.* § 49.60.040(27) (definition); *id.* § 49.60.180 (employment); *id.* § 49.60.215 (public accommodations); *id.* § 49.60.222 (housing). **District of Columbia**: D.C. Code § 2-1401.02(12A-i) (definition); *id.* § 2-1402.11 (employment); *id.* § 2-1402.21 (housing); *id.* § 2-1402.31 (public accommodations); *id.* § 2-1402.41 (education).

[12] Movement Advancement Project, *Local Nondiscrimination Ordinances*, https://tinyurl.com/59p55bap (current as of Jan. 1, 2023).

[13] Discrimination against LGBT individuals directly threatens the interests of States. *See, e.g.*, Christy Mallory et al., Williams Inst., *Impact of Stigma and Discrimination (Michigan)* 56 (2019) (internet); Crosby Burns et al., Ctr. for Am. Progress & AFSCME, *Gay and Transgender Discrimination in the Public Sector: Why It's a Problem for State and Local Governments, Employees, and Taxpayers* 18 (2012) (internet).

[14] Darling-Hammond et al., *supra*, at 97-98.

being. In a recent study, almost 90% of LGBTQ students reported hearing homophobic slurs from their peers, while more than 68% reported feeling unsafe in schools due to their gender identity or expression, or sexual orientation.[15] In a 2022 survey of LGBTQ teenagers, 56.9% of LGBTQ youth reported being verbally or physically harassed at least once in the past thirty days.[16] Of students known or perceived to be transgender, 77% reported negative experiences at school, including harassment and physical assault.[17] And as many as 75% of transgender students surveyed in 2017 felt unsafe at school as a result of their gender identity or gender expression.[18] Transgender students are up to five times more likely to report being bullied at school, threatened or injured with a weapon at school, and being sexually assaulted.[19] Another 2022 survey found that 64% of transgender and nonbinary youth reported being discriminated against because of their gender identity.[20] On the largest survey of transgender people to date, 17% of respondents left K-12 school because of the mistreatment they suffered in view of their gender expression.[21] And 40% of students who experienced frequent verbal harassment because of their gender expression did not plan to continue on to college, as shown in a 2009 study.[22]

---

[15] *Joseph G. Kosciw, GLSEN, The 2021 National School Climate Survey: The Experiences of LGBTQ+ Youth in Our Nation's Schools* xv-xvi, 83, 93 (2022).

[16] Human Rts. Campaign Found., *2023 LGBTQ+ Youth Report* (2023).

[17] Sandy E. James et al., Nat'l Ctr. for Transgender Equal., *The Report of the 2015 U.S. Transgender Survey* 132-34 (Dec. 2016).

[18] *Separation and Stigma: Transgender Youth and School Facilities*, Movement Advancement Project & GLSEN 4 (2017), https://tinyurl.com/ukvkv8tf.

[19] Michelle M. Johns et al., *Transgender Identity and Experiences of Violence Victimization, Substance Use, Suicide Risk, and Sexual Risk Behaviors Among High School Students—19 States and Large Urban School Districts, 2017*, 68 Morbidity & Mortality Wkly. Rep. 67, 69 (2019), https://tinyurl.com/bdf64cbs.

[20] The Trevor Project, *2023 U.S. National Survey at* 16.

[21] James et al., *supra* at 135.

[22] Emily A. Greytak et al., GLSEN, *Harsh Realities: The Experiences of Transgender Youth in Our Nation's Schools* 14, 27 (2009).

By contrast, LGBTQ students who are supported by school staff are less likely to feel unsafe, miss school, or say they may not graduate high school because of their sexual orientation or gender expression, and are more likely to have higher GPAs and feel a greater sense of belonging to their school community.[23] When transgender youth do not suffer discrimination and have their gender identity affirmed, their mental health mirrors that of their cisgender peers, with reduced self-harm ideation and behavior, reduced suicidal ideation, fewer suicide attempts, and enhanced well-being and functioning.[24]

## II.   THE FINAL RULE DEFINES "SEX-BASED HARASSMENT" IN A WAY THAT EFFECTUATES TITLE IX WITHOUT BURDEN OR SURPRISE TO THE STATES.

The Final Rule's definition of sex-based harassment as conduct that "is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity," 89 Fed. Reg. at 33,884, better enables stakeholders to prohibit harassment and redress hostile environments, and comports with the text and intent of Title IX. In Amici State's experience, sex-based harassment need not be severe *and* pervasive to create tangible injury to a student's education. For example, a teacher's repeated inappropriate sexual comments and intrusions of personal space may not be "severe," but could be so pervasive that a student feels unsafe, avoids classes, and is effectively excluded from education. *See, e.g.*, *Feminist Majority Found. v. Hurley,* 911 F.3d 674, 680-82, 687-89, 693 (4th Cir. 2018) (series of harassing social media posts sent over campus wireless network could support Title IX harassment claim);

---

[23] Kosciw et al., *supra*, at xviii-xx, 41-42.

[24] Kristina R. Olson et al., *Mental Health of Transgender Children Who Are Supported in Their Identities*, Pediatrics, Mar. 2016, at 5-7; *see also* World Professional Association for Transgender Health, *Standards of Care for the Health of Transgender and Gender Diverse People*, Version 8, Int'l J. of Transgender Health S107 (Sept. 2022); Stephen Russell et al., *Chosen Name Use Is Linked to Reduced Depressive Symptoms, Suicidal Ideation, and Suicidal Behavior Among Transgender Youth*, J. of Adolescent Health 503 (2018); *The Trevor Project Research Brief: LGBTQ & Gender-Affirming Spaces*, The Trevor Project (Dec. 2020), https://tinyurl.com/2c2p7zkf.

*Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 409 (5th Cir. 2015) ("offensive remarks made every few months over three years" raised genuine dispute regarding Title VII hostile environment).

By covering severe *or* pervasive forms of harassment, the Final Rule also effectuates the breadth of 20 U.S.C. § 1681(a) and advances Congress' objectives, because "the scope of the behavior that Title IX proscribes" for administrative enforcement is not limited to "severe, pervasive, and objectively offensive" conduct. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 639, 652 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280-81 (1998); 20 U.S.C. § 1682.[25] The Final Rule protects students from both severe incidents of harassment, and a series of lesser unwelcome incidents that become pervasive.

Amici States' experience also teaches that no sovereign jurisdiction should be burdened or surprised by the Final Rule's return to the "severe or pervasive" standard. For more than thirty years, ED defined harassment as conduct that was "sufficiently severe, pervasive or persistent" to *interfere with, limit, or adversely affect*, rather than *deny*, a student's ability to participate in or benefit from an education program or activity, and consistently applied this definition to address harassment under Title IX and Title VI.[26] Amici States have long understood that this definition

_____

[25] Plaintiffs mistakenly rely on *Davis* to argue that harassment must be "severe, pervasive, *and* objectively offensive." Br. at 27. But *Davis* makes clear that its rule applies only to private damages claims, 526 U.S. at 652; *see also Gebser*, 524 U.S. at 283-84, 287, and does not otherwise limit ED's regulatory authority, *see Gebser*, 524 U.S. at 292.

[26] *See*, *e.g.*, Racial Incidents and Harassment Against Students at Educational Institutions; Investigative Guidance, 59 Fed. Reg. 11,448, 11,449 (Mar. 10, 1994); Sexual Harassment Guidance: Harassment of Students by Sch. Emps., Other Students, or Third Parties, 62 Fed. Reg. 12,034, 12,038 (Mar. 13, 1997) ("[S]exual harassment must be sufficiently severe, persistent, or pervasive that it adversely affects a student's education . . . ."); U.S. Dep't of Educ., Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties (Jan. 2001), at v, 6 (noting that harassment must "deny or limit" student's education, and single "sufficiently severe" incident of sexual harassment can create hostile environment); Russlyn Ali, Assistant Sec'y for Civ. Rts., Off. for Civ. Rts., Dear Colleague Letter (Apr. 4, 2011, withdrawn Sept. 22, 2017) ("The more severe the conduct, the less need there is to show a

applies to their schools, and the Final Rule correctly returns to ED's longstanding definition and aligns with case law. *See, e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (applying "severe or pervasive" standard); *Franklin*, 503 U.S. at 75 (sexual harassment constitutes discrimination under Title IX); *Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018) (applying "severe or pervasive" standard to Title IX harassment).

Finally, in Amici States' experience, defining sexual harassment to encompass both severe and pervasive forms of harassment is essential to ensure the safety and sense of belonging that students need in order to learn and thrive. Students who experience safe and supportive school climates see improvements in academic achievement and healthy development, and such schools are more effective at preventing violence and retaining teachers.[27] (*See also supra*, at pp. 3-5.)

## III.   THE FINAL RULE DOES NOT VIOLATE THE SPENDING CLAUSE OR OTHER CONSTITUTIONAL PROVISIONS.

Although the Final Rule is consistent with Title IX's mandate, Plaintiffs insist that it violates the Spending Clause, U.S. Const. art. I, § 8, cl. 1, arguing it violates the "clear-statement rule," is unduly coercive, and could infringe on First Amendment rights.[28] This argument runs contrary to Amici States' actual experience. The Final Rule does not require states to establish any

---

repetitive series of incidents to prove a hostile environment . . . ."); U.S. Dep't of Educ., *Q&A on Title IX and Sexual Violence* (Apr. 24, 2014, withdrawn Sept. 22, 2017) (same); U.S. Dep't of Educ., *Q&A on Campus Sexual Misconduct* (Sept. 2017, rescinded Aug. 2020) (applying "severe, persistent, or pervasive" and "deny or limit" standards).

[27] *See, e.g.*, Jenna Howard Terrell et al., *Conceptualizing and Measuring Safe and Supportive Schools*, 24 Contemp. Sch. Psych. 3 (Aug. 2020); Darling-Hammond et al., *supra*, at 97-98; *see also* Ctrs. For Disease Control, Youth Risk Behavior Survey: Data Summary & Trends Report 2011-2021 72 (2023), https://tinyurl.com/2p6w6yrv.

[28] The Final Rule is consistent with the U.S. Constitution. Supreme Court precedent forecloses Plaintiffs' First Amendment challenge and undeveloped parental-rights argument. *See, e.g.*, *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 82 (1998) (Title VII can prohibit verbal harassment); *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rts. Comm'n*, 584 U.S. 617, 631 (2018) (Free Exercise Clause does not allow discrimination in violation of "neutral and generally applicable . . . law"); *Runyon v. McCrary*, 427 U.S. 160, 177 (1976) (narrowly limiting parental rights in school context).

new programs; it just clarifies that established programs must protect LGBTQ students from discrimination on the basis of sex, using the Title IX framework that funding recipients already have in place. Many of the Amici States have already implemented these protections, and have incurred *de minimis* costs in doing so, while conferring significant benefits to students.[29] Moreover, most courts have held that discrimination based on LGBTQ identity is sufficiently ascertainable from Title IX's prohibition against sex discrimination, so the clear-statement rule should be satisfied. *See Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 619 n.18 (4th Cir. 2020); *see also J.A.W. v. Evansville Vanderburgh Sch. Corp.*, 323 F. Supp. 3d 1030, 1037 (S.D. In. 2018).[30] The Final Rule does not transgress the constitutional limitations on conditions imposed on federal spending. It requires funding recipients to do only what it has always required: refrain from discriminating against students on the basis of sex, and remedy any discrimination they may find.

**CONCLUSION**

This Court should deny Plaintiffs' motion for emergency and preliminary relief.

---

[29] School-based gender-affirming policies are linked to dramatic decreases in depression, anxiety, and suicidal ideation among transgender and nonbinary students. *See* Toomey et al., *Gender-Affirming Policies Support Transgender and Gender Diverse Youth's Health*, Soc'y for Rsch. in Child Dev. (Jan. 27, 2022), https://tinyurl.com/ms6eubb7.

[30] *See also Tennessee v. U.S. Dep't of Agric.*, 665 F. Supp. 3d 880, 916 (E.D. Tenn. 2023) (concluding statute prohibiting sex discrimination for SNAP and SNAP-Ed funding recipients "unambiguous[ly]" prohibited gender identity discrimination, "and always has").

Date: June __, 2024                              Respectfully submitted,

**ROB BONTA**                                    **MATTHEW J. PLATKIN**
*Attorney General*                               *Attorney General*
*State of California*                             *State of New Jersey*

/s/ Laura Faer                                   /s/ Lauren E. Van Driesen
LAURA FAER                                       LAUREN E. VAN DRIESEN (*pro hac vice*)
Supervising Deputy Attorney General             JESSICA L. PALMER
CHRISTINA RIEHL                                  ANDREW H. YANG
EDWARD NUGENT                                    AMANDA I. MOREJÓN
Deputy Attorneys General                         GIANCARLO G. PICCININI
California Attorney General's Office             Deputy Attorneys General
1515 Clay Street, 20th Floor                     New Jersey Attorney General's Office
Oakland, CA 94612-0552                           124 Halsey Street, 5th Floor
(510) 879-3305                                   Newark, NJ 07101
Laura.Faer@doj.ca.gov                            (973) 648-2893
                                                 Lauren.VanDriesen@law.njoag.gov
*Attorneys for Amicus Curiae State of California*
                                                 *Attorneys for Amicus Curiae State of New Jersey*


**MICHELLE HENRY**
*Attorney General*
*Commonwealth of Pennsylvania*

/s/ Lisa E. Eisenberg
LISA E. EISENBERG
Deputy Attorney General
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
(215) 560-2980
leisenberg@attorneygeneral.gov

*Attorney for Amicus Curiae Commonwealth of*
*Pennsylvania*

*[additional counsel listed on subsequent page]*

14

## ADDITIONAL COUNSEL

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway, 10th Floor
Denver, CO 80203

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street N.W.
Washington, DC 20001

KWAME RAOUL
*Attorney General*
*State of Illinois*
115 South LaSalle Street
Chicago, IL 60603

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, Michigan 48909

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*
425 Queen Street
Honolulu, Hawai'i, 96813

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA  02108

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, Vermont 05609-1001