# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **State of Louisiana**, et al.<br><br>*Plaintiff,*<br><br>v.<br><br>**U.S. Department of Education**, et al.,<br><br>*Defendants.* | **No.** 3:24-cv-00563-TAD-KDM (LEAD)<br>**No.** 1:24-cv-00567-TAD-JPM (MEMBER)<br><br>**Judge Terry A. Doughty**<br><br>**Magistrate Judge Kayla D. McClusky** |
| **Rapides Parish School Board**,<br><br>*Plaintiff,*<br><br>v.<br><br>**U.S. Department of Education**, et al.,<br><br>*Defendants.* | |

# RAPIDES PARISH SCHOOL BOARD'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL STAY PENDING APPEAL

# INTRODUCTION

Without even trying to vindicate the Rule's de-minimis-harm provision and new "sex-based harassment" standard, the Government asks this Court to stay its injunction as to all other parts of the Rule. But this Court got it right the first time. It should keep its entire injunction in force to ensure clarity and avoid confusion that would harm Plaintiff Rapides Parish School Board and countless other schools.

As this Court correctly concluded, *see* Memorandum Ruling, Doc. 53 at 18–22 ("Mem. Op."), the Rule's new definition of "sex-based discrimination" in § 106.10 is unlawful and harmful even apart from the Rule's de-minimis-harm provision for gender identity. And the school board objects to the Rule's new harassment regime for reasons beyond gender identity. The Rule jettisons the proper *Davis* standard for speech on any topic, and it is therefore unlawful as applied to other topics. Meanwhile, the Rule goes into effect on August 1, 2024, and the requested stay would require schools to comply with and train their staff on the Rule rapidly, but only partially. That would sow confusion and waste resources. It is clearer and less burdensome to let schools update their policies and practices and re-train their staff just once, if at all, when this litigation ends. In the meantime, schools will continue to operate under Title IX's existing regulations.

Setting aside the burden from piecemeal compliance, this Court should deny the Government's requested stay because the challenged provisions are the heart of the Rule. Severing them would leave an incoherent collection of stray regulations. Again, compelling immediate and piecemeal compliance by August 1 would cause uncertainty and waste resources—the very harms that justified the injunction. And even if some provisions could be severed, the Government forfeited that argument by failing to brief it earlier. Even now, the Government fails to show severability. It does not explain how the Rule could operate without the enjoined provisions. The Court should deny Defendants' Motion for Partial Stay (Doc. 59).

1

## LEGAL STANDARD

A stay pending appeal depends on the same factors considered for a preliminary injunction, but in reverse: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see also Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 401 (5th Cir. 2008). To stay a preliminary injunction pending appeal, the movant's burden is to "demonstrate … that there is a likelihood of reversal." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

## ARGUMENT

Just as all factors favored granting a preliminary injunction, *see* Mem. Op. 36–38, all factors counsel against staying that injunction. The Court has already issued the least burdensome form of relief that could remedy the plaintiffs' injuries. And because the challenged provisions are central to the Rule, it is not functionally operative without them. Severing various provisions would require the Court to impermissibly assume a rulemaking role. Even then, the Government forfeited any argument for severing the Rule at the preliminary relief stage by failing to timely brief severability.

### I. Requiring partial compliance by August 1 would itself cause irreparable harm.

Schools must comply with the Rule's many new provisions by August 1, 2024. The Court's order properly delays that compliance date entirely, *see* Mem. Op. 38–40, meaning schools can avoid wholesale changes to their policies and practices until the conclusion of this litigation. That will spare staff and students the

confusion and headache of trying to internalize and comply with shifting policies and requirements. The Government would have schools make massive changes not only once, but *at least* twice—this summer, and again whenever this litigation ends.

Moreover, the Government never explains how schools can comply with § 106.10 if its partial stay is granted, allowing that provision, but not the Rule's new de-minimis-harm provision, to take effect. Specifically, under § 106.10, how can schools prevent discrimination based on gender identity *and* prevent discrimination based on sex in circumstances where the results of applying these definitions are in direct conflict? The least burdensome approach is to delay the Rule's effective date as to all its provisions—and enjoin its enforcement accordingly—until litigation ends.

## II. The Government has not shown severability—at least at this preliminary stage.

Agreeing with this Court that the Rule is unlawful, a sister court explained that "the impermissible definition of 'discrimination on the basis of sex' in 34 C.F.R. § 106.10 permeates" the entire Rule. *Tennessee v. Cardona*, No. 2:24-072-DCR, slip op. 90 (E.D. Ky. June 17, 2024) (ECF 100). The Government objects that Plaintiff did not individually challenge every provision of the Rule. But this upends severability analysis. The relevant inquiry is whether the provisions not individually challenged can properly be severed. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987). The Government has not met its burden.

### A. The Final Rule operates as a whole, so the challenged provisions cannot be severed.

The Government argues that the Rule should not be enjoined in its entirety because the school board did not challenge every individual provision. That ignores 5 U.S.C. § 705, which directs the Court to delay "the effective date," and this Rule has but one effective date. And in any event, severability is not determined by what

3

was challenged; rather, severability considers whether the removal of the unlawful provisions will "impair the function of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988); *see Med. Ctr. Pharmacy*, 536 F.3d at 401. The severability analysis for administrative rules closely tracks that of statutes. *K Mart Corp.*, 486 U.S. at 294 (applying *Alaska Airlines*' severability analysis in the regulatory context). While the presence of a severability clause, like the one in the Rule, is informative, "the ultimate determination of severability will rarely turn on the presence or absence of such a clause." *United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968).

Here, the challenged provisions are so central to the Rule that it cannot operate without them. The challenged portions are the redefinition of "sex discrimination" in 34 C.F.R. § 106.10, the novel de-minimis-harm standard in 34 C.F.R. § 106.31(a)(2), and the definition of hostile environment harassment in 34 C.F.R. § 106.2. These provisions—particularly the Rule's definition of sex discrimination—inform and pervade the remainder of the Rule. And the Rule as conceived by the Government's motion would leave it impossible for schools to determine whether sex or "gender identity" is the proper consideration when it comes to sex-based distinctions. Because these provisions are foundational, the Rule cannot function coherently in their absence. *Cf. Braidwood Mgmt. v. Becerra*, No. 23-10326, 2024 WL 3079340, at *13 (5th Cir. June 21, 2024) (refusing severance where it would not solve "the constitutional problem" with the statute). That overcomes the severability presumption. *See Alaska Airlines*, 480 U.S. at 686.

### B. Severance would require the Court to engage in inappropriate rulemaking.

Courts should not seek to sever when doing so would "entail quintessentially" executive work. *Cf. Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 329 (2006). Requiring courts to craft such judicial remedies "would inflict enormous

4

costs on both courts and litigants … whenever a single application of a law might be valid." *Whole Woman's Health v. Hellerstedt*, 579 U.S. 582, 625 (2016), *as revised* (June 27, 2016), *abrogated by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Granting a partial stay would require this Court to go through the Rule with a fine-tooth comb in search of any portion that could potentially operate independently of the challenged provisions. Such an in-depth analysis essentially conscripts the Court into executive rulemaking, which falls well outside of the proper judicial role. And even if such severance could be done at final judgment, the Court cannot meaningfully analyze it now because the Government still has not laid out its theory for how the Rule's other provisions will operate while the Court's preliminary order remains partially in place.

      **C.    Even the Government's examples rely on the challenged provisions, underscoring that severance would be inappropriate at this preliminary stage.**

The Government cites various parts of the Rule to argue for severability, but even its examples depend upon the challenged portions. *See* Mem. in Supp. of Mot. for Partial Stay (Doc. 59-1 at 4) ("Stay Mem.").

First, the Government points to the "role of Title IX Coordinators" at 34 C.F.R. § 106.8(a), but these coordinators are tasked with "ensur[ing] the recipient's consistent compliance with its responsibilities under Title IX and this part." Take away the challenged provisions, and the Coordinators' responsibilities to ensure compliance with "this part" become incurably vague. Indeed, if the Government had its wish and § 106.10's definition of sex-based harassment took effect, Title IX Coordinators would be left to wonder whether it is gender identity, sex, or something else that takes precedence when it comes to the many sex-based distinctions recognized by Title IX and its longstanding regulations. Similarly, with the new sex-based harassment standard in place *except as to speech about gender*

5

*identity*, Title IX Coordinators would be tasked with the Rule's heightened investigatory requirements but then, depending on what the alleged "harassment" entails, sometimes apply *Davis* and sometimes not. Title IX cannot properly be read to demand that of school Title IX Coordinators.

Second, the Government points to the regulations on lactation spaces at 34 C.F.R. § 106.40(b)(3)(v). Stay Mem. at 4. This provision requires "actions … to promptly and effectively prevent sex discrimination and ensure equal access." If the de-minimis-harm provision (§ 106.31(a)(2)) remains subject to the injunction—and the Government does not ask for a stay as to that provision—the result is unclear. For example, under § 106.10 but not § 106.31(a)(2), would schools have to allow males access to these private spaces, just as the Rule requires for restrooms, showers, and locker rooms? Because it's unclear how the new "gender identity" and "sex stereotypes" provisions coexist with existing law, women may be put in harm's way just so that schools can avoid accusations of discrimination.

The Government also points to the sections on recipients' notice and record-keeping obligations, 34 C.F.R. § 106.8(c), (f); a recipient's response to sex discrimination, *id.* at § 106.44; and grievance procedures for claims of sex discrimination, *id.* at §§ 106.45, 106.46. Stay Mem. at 4. But executing these provisions turns on the contested definition of sex discrimination and the de-minimis-harm provision. Moreover, these new requirements for schools exacerbate the First Amendment harm caused by the new and broader definitions of sex discrimination and sex-based harassment. And if § 106.10 were allowed to take effect, as the Government requests (Stay Mem. at 4–6), each of these provisions would impose uncertain duties for addressing allegations of discrimination.

6

## III. The Government forfeited any severance argument by failing to adequately brief severability.

Even if some of the Rule's provisions could eventually be severed, the Government forfeited that argument for purposes of preliminary relief. The Government did not timely or meaningfully brief severability. *See Regan v. Time, Inc.*, 468 U.S. 641 (1984). While the Government refers to severance in the final paragraph of its preliminary-injunction opposition (Doc. 38 at 39–40), this meager mention does not preserve the argument. Stating "the remainder of the Rule should be permitted to go into effect" does nothing to show the Court that the "remainder" of the Rule's provisions can function standing alone. To preserve an argument, a party must do more than cursorily mention it. *See Montgomery v. Hargett*, 41 F.3d 662 (5th Cir. 1994) (per curiam); *see also Brenay v. Schartow*, 709 F. App'x 331, 337 (6th Cir. 2017) ("[I]t is not for the court to search the record and construct arguments. Parties must do that for themselves."). And even now, the Government asks the Court to craft a severance scheme from whole cloth. The Court should decline this invitation.

## CONCLUSION

The Court properly enjoined enforcement of the Final Rule in its entirety because the Rule cannot stand without the two core provisions for which the Government does not even seek a stay—much less without all of the challenged provisions. And the Government forfeited any severability argument by failing to timely present it to the Court. The school board respectfully requests that Defendants' Motion for Partial Stay Pending Appeal be denied.

Respectfully submitted this 1st day of July, 2024.

s/ Michael T. Johnson
  **Michael T. Johnson**
LA Bar No. 14401
**Johnson, Siebeneicher & Ingram**
2757 Highway 28 East
Pineville, Louisiana 71360
Telephone: (318) 484-3911
Facsimile: (318) 484-3585
mikejohnson@jslawfirm.com

s/ Natalie D. Thompson
  **Natalie D. Thompson\*\* (Lead Attorney)**
WDLA Temp. Bar No. 918095
**Matthew S. Bowman\***
WDLA Temp. Bar No. 913956
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
nthompson@ADFlegal.org
mbowman@ADFlegal.org

**Julie Marie Blake\***
WDLA Temp. Bar No. 918094
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
jblake@ADFlegal.org

\*    *Admitted pro hac vice*
\*\*  *Admitted pro hac vice; practice supervised by members of the D.C. Bar while application is pending*

*Counsel for Plaintiff Rapides Parish School Board*