# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| The State of LOUISIANA, By and through its Attorney General, Elizabeth B. Murrill; et al., | Civil Action No. 3:24-CV-00563-TAD-KDM |
| PLAINTIFFS, | |
| v. | Chief Judge Terry A. Doughty<br>Magistrate Judge Kayla D. McClusky |
| U.S. DEPARTMENT OF EDUCATION; et al., | |
| DEFENDANTS. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR A PARTIAL STAY PENDING APPEAL**

## INTRODUCTION

This Court enjoined Defendants from enforcing the new Title IX rule, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (the "Rule"), in its entirety in the States of Louisiana, Mississippi, Montana, and Idaho, and postponed the Rule's August 1, 2024 effective date. Defendants now seek a partial stay of this preliminary relief pending appeal; however, they cannot establish that a partial stay is justified. That is why Defendants rely on mischaracterizations of Plaintiffs' briefing and harm, gloss over the interrelated nature of the Rule's provisions, ignore the infeasibility of their proposed partial stay, and disregard how a partial stay would cause Plaintiffs irreparable harm pending appeal. Because Defendants have fallen far short of carrying their burden to justify a stay of the Court's decision in their perfunctory, seven-page brief, the Court should deny Defendants' motion.

## STANDARD OF REVIEW

To obtain a stay of a district court decision pending appeal, Defendants "bear a 'heavy burden.'" *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023) (quoting *Vote.Org v. Callanen*, 39 F.4th 297, 300 (5th Cir. 2022)). In determining whether Defendants have satisfied their burden, the Court must consider the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). When "government Defendants are applying for a stay and Plaintiffs are the opposing party," the factors do not merge, and "[t]he public interest factor is . . . distinct." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 353 (5th Cir. 2022).

## ARGUMENT

I. **DEFENDANTS CANNOT SHOW THEY WILL LIKELY SUCCEED ON THE MERITS.**

Because Plaintiffs are likely to succeed on the merits as explained in Plaintiffs' prior briefing

and as confirmed by this Court and another district court, *see* Pls.' § 705 Br., ECF No. 24 at 1–25; Pls.' § 705 Reply, ECF No. 46 at 1–9; Mem. Ruling, ECF No. 53 at 16–36; *Tennessee v. Cardona*, No. CV 2: 24-072-DCR, 2024 WL 3019146, at *7–36 (E.D. Ky. June 17, 2024), Defendants cannot show that they will likely succeed on the merits of their appeal. Indeed, they do not even try—they simply direct the Court to their previous briefing.

Defendants, however, advance a new argument regarding their preferred scope of the preliminary injunction. They contend (at 3) the Court entered an overbroad injunction "to the extent it extends beyond . . . (i) 34 C.F.R. § 106.31(a)(2), and (ii) the hostile environment harassment definition in 34 C.F.R. § 106.2, as applied to discrimination on the basis of gender identity." But Defendants forfeited this argument. *See* Pls.' § 705 Reply at 10 ("Defendants' cursory request that the Court tailor any relief fails to provide true guidance on how to craft such relief (especially since the Rule's provisions work together to amplify Plaintiffs' harm) and so can be rejected." (citing *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016)); *Texas*, 829 F.3d at 435 (concluding the agency "waived any argument about the scope of the stay" when it, "in passing, request[ed] that any stay be 'narrowly tailored'"). In any event, Defendants also fail to show that they are likely to succeed on this argument. Their only cited authority for the propriety of narrowing preliminary relief is a gerrymandering case where the Supreme Court vacated the judgment and remanded the case to give plaintiffs the opportunity to introduce evidence regarding standing. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018). But there is no dispute that Plaintiffs have demonstrated standing here. Nor can Plaintiffs' standing be plausibly disputed when (1) the Rule itself concedes that it increases Plaintiffs' regulatory burdens and compliance costs, and (2) Plaintiffs introduced ample evidence substantiating that the Rule causes them concrete and particularized injuries. *See, e.g.*, Pls.' § 705 Br. at 25–28.

Regardless, Defendants cannot show that the preliminary injunction is overbroad, because narrowing the injunction as Defendants request will cause Plaintiffs irreparable harm. Defendants

contend otherwise only by claiming (at 3) that Plaintiffs' harms all stem from "the Rule's treatment of gender identity." That is false. In their briefing, Plaintiffs challenged more than the Rule's gender-identity provisions and showed how other provisions also contravene Title IX, are otherwise unlawful, and injure Plaintiffs. For example, Plaintiffs argued that the Rule's redefinition of Title IX's general prohibition on sex discrimination to include discrimination based on grounds other than biological sex (including, but not limited to, gender identity) is unlawful and harms them.[1] Plaintiffs also challenged the Rule's sexual harassment definition across the board, not just how the sexual harassment definition applies in the gender identity context.[2] That provision injures Plaintiffs by making them federally commandeered censors over a large swath of protected speech—not just in the gender identity context.

Furthermore, narrowing the injunction as Defendants request would be improper, because the Rule's provisions work together to cause and exacerbate Plaintiffs' harm. In Plaintiffs' briefs, they provided examples of how the Rule's provisions operate in tandem to increase Plaintiffs'

---

[1] *See, e.g.*, Pls.' § 705 Br., ECF No. 24 at 9 (arguing "the Rule expands Title IX to include 'discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation and gender identity'" (quoting 89 Fed. Reg. at 33,476)); *id.* at 12 (arguing the Rule rewrites Title IX's clear terms "by interpreting 'sex' in Title IX to embrace 'gender identity' and other concepts that are distinct from biological sex when the term 'sex' in Title IX means biological sex"); *id.* at 13 (explaining § 1681(a)'s "prohibition on sex discrimination means recipients generally cannot discriminate based on someone's biological sex; it does not prohibit discrimination based on 'gender identity' or other grounds"); *id.* at 14 (highlighting that Title IX "refers to 'sexual orientation' and 'gender identity' not as 'sex' but as a separate 'status'"); *id.* at 14–15 ("[T]he general prohibition on sex discrimination in § 1681 means only discrimination based on biological sex is prohibited under Title IX."); *id.* at 25–28 (discussing how the Rule's provisions will harm Plaintiffs, including increasing complaints, investigations, and private litigation); Pls.' § 705 Reply, ECF No. 46 at 3 ("In any event, *Bostock*'s reasoning provides no support for defining discrimination based on biological sex to include discrimination based on other grounds, including gender identity.").

[2] *See, e.g.*, Pls.' § 705 Br., ECF at 16–18 (explaining the Rule's harassment standard contravenes Title IX and violates the First Amendment); Pls.' § 705 Reply at 4–6 (reiterating that the Rule's harassment standard "disregards Title IX's textual limitations" and burdens recipients, including by requiring them to monitor additional behavior and to report and censor additional speech).

3

obligations, liability risks, and compliance costs and to induce Plaintiffs to violate constitutional rights.[3] For example, Plaintiffs explained that the Rule's increased reporting and response requirements, combined with the unlawful expansion of what constitutes sex discrimination, chills speech and greatly increases Plaintiffs' obligations. *See* Pls.' § 705 Br. at 16; Pls.' § 705 Reply at 5.

Defendants thus fail to acknowledge all aspects of the Rule that Plaintiffs challenge and the interconnected nature of the Rule's provisions. The reality is that the challenged provisions "permeate[]" the Rule, making severance infeasible and unnecessary, especially when Defendants' "rulemaking was arbitrary and capricious, resulting in a rule that is invalid in its entirety." *Tennessee*, 2024 WL 3019146, at *43; *cf. Chamber of Commerce v. U.S. Dep't of Labor*, 885 F.3d 360, 388 (5th Cir. 2018) ("[T]his comprehensive regulatory package is plainly not amenable to severance."); *Villas at Parkside Partners v. City of Farmers Branch*, 726 F.3d 524, 544 (5th Cir. 2013) (en banc) (Dennis, J., concurring) ("In my view, the Ordinance's fundamental defects . . . are intrinsic to the Ordinance's structure and run throughout its various provisions, making a severability analysis unnecessary.").

## II. Defendants Will Not Suffer Irreparable Harm Without a Partial Stay.

Defendants also cannot show they will suffer any harm, much less irreparable harm absent a partial stay. Defendants' only claimed injury is the alleged interference with their ability to enforce

---

[3] *See, e.g.,* Pls.' § 705 Br. at 16 ("Moreover, the Rule's harassment standard (particularly when combined with its expansion of 'sex' to include other concepts) chills and punishes protected speech— an effect that is amplified by the requirement that teachers report any speech that could be considered harassment and that recipients must respond to what may be prohibited harassment." (citing 89 Fed. Reg. at 33,563, 33,888)); *id.* at 21 (arguing the Rule's provisions will induce Plaintiffs to infringe "Free Speech, Free Exercise, Due Process, and parental rights"); *id.* at 22–23, 25 (arguing the Rule was arbitrary and capricious because, among other defects, it failed to properly address concerns regarding First Amendment, Due Process, and parental rights); *id.* at 25 (arguing the Rule "underestimated the times and costs it will take to review and understand such a lengthy and contradictory Rule, to revise policies, and to train employees"); *id.* at 26–27 (discussing "increased regulatory burdens and compliance costs" and "increased recordkeeping obligations, complaints, administrative investigations, and private litigation"); Amended Compl., ECF No. 11 ¶¶ 125–26 (discussing increased recordkeeping burden and other compliance costs, including those stemming from increased complaints, investigations, and lawsuits).

Title IX to prevent discrimination. But the injunction does not prevent Defendants from enforcing Title IX to prevent discrimination, nor does it prevent Defendants from enforcing longstanding Title IX regulations as it has for decades. All the injunction will do is prevent Defendants from enforcing the new, not-yet-effective Rule that (a) has never been in effect and thus has generated no reliance interests and (b) subverts rather than effectuates Title IX. Moreover, Defendants still have no answer as to how they will suffer irreparable harm from delaying the Rule's effective date when Defendants *themselves* delayed the issuance of the Rule multiple times. *See* Pls.' § 705 Br. at 28; Pls.' § 705 Reply at 10. By Defendants' telling, therefore, Defendants *themselves* have been engaged in irreparable self-harm (and irreparable harm to the public). Their position is incoherent and should be rejected as such.

### III.     Plaintiffs Will Suffer Irreparable Harm if a Partial Stay Is Granted.

In contrast, Plaintiffs will suffer irreparable harm if the Court grants Defendants' requested stay because, among other things, it would destroy the status quo. Plaintiffs accordingly would still be forced to incur unrecoverable compliance costs. *See Rest. Law Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 597–98 (5th Cir. 2023) (explaining "the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm" and "the key inquiry is 'not so much the magnitude but the irreparability,'" such as when economic costs cannot be recovered from a federal agency that enjoys sovereign immunity (quoting *Texas*, 829 F.3d at 433–34)). Plaintiffs, for example, would be compelled to expend time and resources to understand the redlined Rule, revise policies, and train employees. And, once this case is ultimately resolved, Plaintiffs may be forced to expend resources yet again if the scope of the final relief differs from the preliminary relief or if the Rule ends up surviving judicial review.

Moreover, Defendants' proposed injunction would not protect Plaintiffs from other irreparable harms. After all, if the Court only enjoins "(i) 34 C.F.R. § 106.31(a)(2), and (ii) the hostile environment harassment definition in 34 C.F.R. § 106.2," Defs.' Stay Br., ECF No. 59, at 3, then

Plaintiffs will still be subject to the unlawful gender-identity mandates. That is because 34 C.F.R. § 106.10 and § 106.31(a)(1) would still go into effect. Those provisions provide:

> Discrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity.

and

> Except as provided elsewhere in this part, no person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any academic, extracurricular, research, occupational training, or other education program or activity operated by a recipient that receives Federal financial assistance.

89 Fed. Reg. 33,886–87. Based on those provisions, Defendants will inevitably classify treating a person consistently with their biological sex as gender-identity discrimination and thus prohibited sex discrimination. *See, e.g.*, U.S. Dep't of Justice and U.S. Dep't of Educ., *Confronting Anti-LGBTQI+ Harassment in Schools: A Resource for Students and Families (Fact Sheet)* (June 23, 2021), https://www2.ed.gov/about/offices/list/ocr/docs/ocr-factsheet-tix-202106.pdf (indicating Defendants will investigate recipients for discrimination based on gender identity if they refuse to compel students to refer to a classmate by whatever pronoun that classmate chooses or bar a biological male who claims to be a "transgender high school girl" from using the girls' restroom or trying out for the girls' cheerleading team). That means, if the Court narrows the injunction, Plaintiffs still will be forced to treat students consistently with their self-professed gender identities, including for facility access, and Plaintiffs will remain subject to all the irreparable harms identified in earlier briefing and recognized by the Court. *See* Pls.' § 705 Br. at 25–28; Pls.' § 705 Reply at 9–10; Mem. Ruling at 36–37. Defendants' proposed slicing and dicing of the injunction thus attacks the very core of the Court's decision and will cause significant irreparable harm.

### IV.   A Partial Stay Would Disserve the Public Interest.

Finally, the public interest emphatically weighs against Defendants' stay request. Allowing Defendants to enforce portions of the unlawful and arbitrary and capricious Rule would undermine

the public interest "in having governmental agencies abide by the federal laws that govern their existence and operations." *Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (quoting *Washington v. Reno*, 35 F.3d 1093, 1102 (6th Cir. 1994)). Indeed, Defendants have "no 'interest in the perpetuation of unlawful agency action.'" *Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022) (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). A partial stay also would hurt "the public's interest in the enforcement of duly enacted state laws, academic freedom, and in preventing the violation of constitutional rights of students, parents, and teachers." Pls.' § 705 Br. at 28–29; *see U.S. Navy Seals 1-26*, 27 F.4th at 353 ("[I]njunctions protecting First Amendment freedoms are always in the public interest." (quoting *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)). Finally, a partial stay would create confusion regarding what aspects of the Rule will go into effect, which will burden (a) schools and teachers trying to figure out their obligations and (b) families trying to decide whether to homeschool their children or enroll them in private school next year.

## CONCLUSION

The Court should deny Defendants' Motion for a Partial Stay Pending Appeal.

| | |
|---|---|
| Dated: July 1, 2024 | Respectfully Submitted, |
| | **ELIZABETH B. MURRILL**<br>**Attorney General of Louisiana** |
| | */s/ Tracy Short* |
| Donald A. Daugherty, Jr.* | J. Benjamin Aguiñaga* |
|   *Senior Counsel, Litigation* |   *Solicitor General* |
| Paul Zimmerman* | Tracy Short (La # 23940) |
|   *Senior Counsel, Policy and Regulation* |   *Assistant Chief Deputy Attorney General* |
| Martha A. Astor* | Autumn Hamit Patterson* |
|   *Counsel, Litigation* |   *Special Assistant Solicitor General* |
| DEFENSE OF FREEDOM INSTITUTE FOR POLICY STUDIES | OFFICE OF THE LOUISIANA ATTORNEY GENERAL |
| 1455 Pennsylvania Avenue, NW, Suite 400 | 1885 North Third Street |
| Washington, DC 20004 | Baton Rouge, Louisiana 70802 |
| (414) 559-6902 | (225) 326-6705 |
| Don.Daugherty@dfipolicy.org | aguinagab@ag.louisiana.gov |
| Paul.Zimmerman@dfipolicy.org | shortt@ag.louisiana.gov |
| Martha.Astor@dfipolicy.org | |
| | *Counsel for Plaintiff State of Louisiana, Plaintiff Louisiana Department of Education, and Plaintiff School Boards* |
| *Counsel for Plaintiff States* | |
| **LYNN FITCH**<br>**Attorney General of Mississippi** | **AUSTIN KNUDSEN**<br>**Attorney General of Montana** |
| Scott G. Stewart* | Christian B. Corrigan* |
|   *Solicitor General* |   *Solicitor General* |
| Justin L. Matheny* | Peter Torstensen* |
|   *Deputy Solicitor General* |   *Deputy Solicitor General* |
| MISSISSIPPI ATTORNEY GENERAL'S OFFICE | MONTANA DEPARTMENT OF JUSTICE |
| P.O. Box 220 | 215 N. Sanders Street |
| Jackson, Mississippi 39205 | Helena, Montana 59601 |
| (601) 359-3680 | (406) 444-2707 |
| scott.stewart@ago.ms.gov | Christian.Corrigan@mt.gov |
| justin.matheny@ago.ms.gov | Peter.Torstensen@mt.gov |
| *Counsel for Plaintiff State of Mississippi* | *Counsel for Plaintiff State of Montana* |

**RAÚL LABRADOR**
**Attorney General of Idaho**
Alan Hurst*
  *Solicitor General*
Josh Turner*
  *Chief of Constitutional Litigation and Policy*
OFFICE OF THE ATTORNEY GENERAL OF IDAHO
700 W. Jefferson Street, Suite 201
P.O. Box 83720
Boise, Idaho 83720
(208) 334-2400
Alan.Hurst@ag.idaho.gov
Josh.Turner@ago.idaho.gov

*Counsel for Plaintiff State of Idaho*

*\*Admitted Pro Hac Vice or Pro Hac Vice admission application forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 1, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participating attorneys.

*/s/ Tracy Short*
Tracy Short

9