**IN THE UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| The State of Louisiana; Louisiana Department of Education; The State of Mississippi; The State of Montana; The State of Idaho, | **Case No. 3**:24-cv-00563 |
| *Plaintiffs,* | |
| *and* | |
| Ella Woodall, an individual; M.C. and J.C., by their mother, Kara Claridge; and Kara Claridge, Individually | |
| *Proposed Intervenor-Plaintiffs,* | Judge Terry A. Doughty |
| v. | |
| Miguel Cardona, in his official capacity as Secretary of Education; and United States Department of Education, | |
| *Defendants.* | Magistrate Judge Kayla D. McClusky |

**INTERVENOR-PLAINTIFFS' MOTION TO INTERVENE**

Proposed Intervenors Ella Woodall, C.C., by her next friend and mother, Kara Claridge (collectively, "Proposed Intervenor Plaintiffs"), through undersigned counsel, hereby move, under Rule 24(a) of the Federal Rules of Civil Procedure, to intervene as of right as plaintiffs in this action, or, in the alternative, for permissive intervention as plaintiffs under Rule 24(b) of the Federal Rules of Civil Procedure.

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| The State of Louisiana; Louisiana Department of Education; The State of Mississippi; The State of Montana; The State of Idaho, | **Case No.** 3:24-cv-00563 |
| *Plaintiffs,* | |
| and | |
| Ella Woodall, an individual; M.C. and J.C., by their mother, Kara Claridge; and Kara Claridge, Individually | |
| *Proposed Intervenor-Plaintiffs,* | Judge Terry A. Doughty |
| v. | |
| Miguel Cardona, in his official capacity as Secretary of Education; and United States Department of Education, | |
| *Defendants.* | Magistrate Judge Kayla D. McClusky |

## INTERVENOR PLAINTIFFS PROPOSED COMPLAINT

### BACKGROUND

1. Many decades ago, Congress passed Title IX to promote equal opportunities for women and men by prohibiting discrimination "on the basis of sex" in educational programs.

2. Specifically written into Title IX was the acknowledgement that schools contemplate the differences between males and females to establish equal opportunity. Therefore, since Title IX's inception, schools have separated bathrooms, locker rooms and private spaces by biological sex.

3. In the student Intervenor's cases, their individual schools or school districts have specifically adopted policies to solidify the importance of this separation. However, the

1

Department of Education's recent rules reinterpreting Title IX obliterate the longstanding purpose of Title IX to protect girls such as Intervenors.

4. Biological differences exist between males and females and one's subjective feelings cannot change this.

5. Student Intervenors are female Idaho public school students who currently attend schools that separate bathrooms, locker rooms and private spaces based on biological sex. Their schools acknowledge the innate differences between males and females and the privacy and safety concerns that flow from not strictly separating males and females in this manner.

6. Importantly, their schools honor the spirit of Title IX as it has been for the last 50 years. Yet the Department's new rules would not allow the student Intervenor's schools to maintain their current policies, forcing girls to share bathrooms, locker rooms, and private spaces with boys.

7. This Court should rule that the Department's new rules are invalid, because they conflict with constitutional and statutory rights to privacy.

8. The rules also mandate that students and teachers utilize pronouns for those who request them to be used and are not based on biological sex.

9. All Intervenors object to such requirements as they violate their sincerely held religious beliefs regarding human sexuality.

10. Intervenors' schools currently have policies in place that do not compel speech in this way.

11. However, the Department's new rules will demolish Intervenor's right to free speech and free exercise.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the U.S. Constitution.

13. This Court has jurisdiction under 28 U.S.C. § 1346(a) because this is a civil action against the United States.

14. This Court may grant declaratory relief under 28 U.S.C. §§ 2201–02.

15. This Court may grant injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65.

16. This Court may award costs and attorneys' fees under 28 U.S.C. § 2412.

17. Venue is proper in this Court and this division under 28 U.S.C. § 1391 because Defendants are agencies of the United States or officers and employees of a United States agency acting in their official capacity or under color of legal authority. Further, (1) Defendants can and do perform official duties in this district; (2) Plaintiff Louisiana resides in this District; (3) Louisiana's agencies and employees subject to the agency actions at issue reside in the District; (4) a substantial part of the events or omissions giving rise to Louisiana's claims occurred in this district; (5) Intervenors reside in the Plaintiff State of Idaho; (6) Intervenors are protected by laws enacted and enforced by Plaintiff Idaho; and (7) the effects of Defendants' challenged actions are in this district.

## INTERVENORS

18. Ella Woodall is an 18-year old girl who resides in Kootenai County, Idaho. Ms. Woodall currently attends Lakeland High School.

19. M.C. is a 14-year-old girl who resides in Kootenai County, Idaho.  M.C. currently attends Kootenai Classical Academy, a public charter school.

20. J.C. is a 10-year-old girl who resides in Kootenai County, Idaho. J.C. currently attends Kootenai Classical Academy, a public charter school.

21. Kara Claridge resides in Kootenai County, Idaho. Ms. Claridge is a teacher at Kootenai Classical Academy, a public charter school.

## DEFENDANTS

22. Defendant Miguel Cardona is sued in his official capacity as Secretary of the United States Department of Education.

23. Mr. Cardona is responsible for the overall operations of the U.S. Department of Education, including the Department's administration of Title IX and its regulations.

24. Defendant United States Department of Education ("Department") is an agency under 5 U.S.C. §§ 551 and 701(b)(1). The Department implements and enforces Title IX and the rule.

## STATEMENT OF FACTS

25. In 1972, Congress enacted Title IX, which states that:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a).

26. Title IX's purpose was to promote equal opportunities for women and girls.

27. Title IX is typically known for its effects on women and girls' sports, although this is not the only relevant piece of Title IX's protections.

28. Title IX also protects student's privacy in bathrooms and other private spaces, and requires that both sexes have comparable facilities, while allowing separation by biological sex to ensure this privacy.

29. To receive federal funds, schools must have policies that are consistent with Title IX.

30. The nation has watched the trend of males utilizing female private spaces because those males "identify" as females.

31. Similarly, those who "identify" as the opposite sex have required others to use pronouns that are inconsistent with biological sex.

32. Courts have been grappling with these issues as have state legislatures and local school districts.

4

33. Intervenors reside in the state of Idaho, which as a state has also debated these issues in the legislature.

34. In 2023, Idaho passed a law that required public schools to separate bathrooms, locker rooms and private spaces based on biological sex (see Idaho Code § 33-6603).

35. The law was challenged in Idaho federal court, although the district court judge did not issue an injunction to enforce the law, and the law went into effect.

36. Shortly thereafter, an appeal was made to the 9th Circuit Court of appeals and an injunction was issued.

37. Despite the injunction, many Idaho schools and school districts chose to maintain policies separating private spaces based on biological sex because they saw the clear violations of student's rights to privacy and the distress this caused students and parents.

38. Intervenors all attend such schools that maintain policies to protect their right to privacy (see attached policies as Exhibit A).

39. In fact, intervenors would not attend these schools at all if they did not have such policies because their privacy concerns would be all-consuming, and not allow for a proper educational environment.

40. Recently, Idaho passed House Bill 538, which prevents government entities from disciplining employees who refuse to utilize pronouns inconsistent with one's biological sex.

41. This will provide clear protection in addition to already existing protections within the First Amendment for Idaho public school teachers such as Ms. Claridge.

42. However, Intervenor's situations will soon change if the Department's complete re-interpretation of Title IX is allowed to go into effect.

43. Under the new rules, "discrimination on the basis of sex includes discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity."

44. The Department's new rules would force intervenor's schools to change their current policies to avoid being subject to sex discrimination liability and/or lose federal funding.

45. Intervenors have seen the impact of not having good policies in place right in their own community.

5

46.  In 2023, female students in Intervenor's county spoke to their own school board about their concerns with male students entering their bathrooms. [1]

47. Their concerns, similar to the concerns of female students and parents all over the state, were heard by the state legislature and led to the passing of Idaho Code § 33-6603.

48. However, the Department's rules prohibit not only the state of Idaho from enforcing its own law, but it prohibits individual schools from limiting access to bathrooms or other private spaces according to biological sex rather than gender identity.

49.  The rules force schools to allow males who subjectively feel like they are females access to female spaces.

50.  This obliterates Title IX's guarantee of equal educational opportunities and prohibits schools from safeguarding girl's privacy.

51.  Absent injunctive and declaratory relief, Intervenors will be harmed by the rules' mandates, and Intervenors have no adequate remedy at law.

## CLAIM I

### (Violation of Intervenor's Privacy Rights in Violation of 42 U.S.C. § 1983 Against Defendants)

52.  Intervenors refers to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

53.  Courts have provided longstanding recognition that "[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity" (*York v. Story*, 324 F. 2d 450, 455 (9th Cir. 1963)).

54. The new rules deprive Intervenors of single-sex spaces like bathrooms, locker rooms and other private spaces, leaving them vulnerable to the opposite sex while in an undressed state.

55. The new rules deprive Intervenors of state statutory protections for single-sex spaces like bathrooms, locker rooms and private spaces.

[1] https://www.kxly.com/news/cda-school-board-discusses-transgender-use-in-public-bathrooms/article_85b4e762-c21a-11ed-8a9e-b754ce809f47.html

56. The new rules deprive Intervenor's individual schools from having policies that mandate single-sex spaces like bathrooms, locker rooms and private spaces.

## CLAIM II

### (Violation of Intervenor's Free Speech Rights in Violation of 42 U.S.C. § 1983 Against Defendants)

57. Intervenors refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

58. The First Amendment provides: "Congress shall make no law...abridging the freedom of speech..." U.S. Const. Amend. I.

59. Viewpoint-based restrictions on speech are unconstitutional.

60. Defendants have decided to prohibit one viewpoint on human sexuality and gender, but allow other contrary viewpoints.

61. Compelled speech has long been established to be violative of First Amendment Free Speech rights and considered demeaning by the United States Supreme Court.

62. The Rules would force Intervenors to use pronouns inconsistent with a person's biological sex even if they disagree with this view of human sexuality.

63. Under the Rules, it would be considered sex discrimination if Intervenors openly speak about their beliefs that marriage is between a man and a woman, or that one cannot subjectively change their God-given sex.

## CLAIM III

### (Violation of Intervenor's Free Exercise of Religion Rights in Violation of 42 U.S.C. § 1983 Against Defendants)

64. Intervenors refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

65. The Free Exercise Clause to the First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law...prohibiting the free exercise" of religion.

66. The Free Exercise Clause protects against governmental hostility toward religion.

67. Intervenors have sincerely held religious beliefs that sex is not a mutable characteristic, but rather something given by God from the moment of conception.

68. Under the new rules, if Intervenors expressed this belief, this may be considered sexual harassment.

69. Similarly, if Intervenors refuse to use pronouns contrary to someone's God-given sex, this may be considered sexual harassment.

70. The Rules are hostile toward those with religious beliefs such as Intervenors.

## PRAYER FOR RELIEF

Intervenors respectfully ask this Court for the following relief:

A.      A declaratory judgment against all Defendants that the new rules violate Intervenor's Privacy, Free Speech and Free Exercise Rights.

B.      An award of attorney's fees, costs, and expenses against all Defendants pursuant to 42 U.S.C. § 1988.

C.      To permanently enjoin Defendants from enforcing the new rules.

D.      To grant all other relief the Court deems just and proper.

This the 1st day of July, 2024.

Respectfully submitted,                        Respectfully submitted,
PACIFIC JUSTICE INSTITUTE                  PERKINS & ASSOCIATES, LLC

By:    */s/ Janice Lorrah*                   By:    */s/ Mark A. Perkins*
       Janice Lorrah *                               Mark A. Perkins (Bar No. 18529)
       Legislative Counsel, PJI
       P. O. Box 3571                                670 Albemarle Drive, Suite 1200
       Wilmington, De 19807                          Shreveport, Louisiana 71006
       Colorado State Bar No. 42917                  T: (318) 222-2426
                                                     F: (318) 222-0458
       T : (302) 379-7249                            Email: perkins@perkinsfirm.com
       Email: jlorrah@pji.org
                                                     *Counsel for Intervenors Plaintiffs*

Respectfully submitted,
PACIFIC JUSTICE INSTITUTE

By:    */s/Katherine I. Hartley*
       Katherine I. Hartley *
       Idaho State Bar No.: 11837
       PO Box 2131
       Coeur d'Alene, ID 83816
       T: 916-857-6900
       Email: Khartley@pji.org

*Motion for pro hac vice admission filed

8

## Certificate of Service

I hereby certify that on the 25th of June, 2024 , I presented the foregoing Intervenors Plaintiffs Complaint and Memorandum   of Law in Support of Motion to Intervene to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following: THE STATE OF LOUISIANA, by and through its Attorney General, Elizabeth B. Murrill; LOUISIANA DEPARTMENT OF EDUCATION; THE STATE OF MISSISSIPPI, by and through its Attorney General, Lynn Fitch; THE STATE OF MONTANA, by and through its Attorney General, Austin Knudsen; THE STATE OF IDAHO, by and through its Attorney General, Raul Labrador; U.S. DEPARTMENT OF EDUCATION; MIGUEL CARDONA, in his official capacity as Secretary of Education; U.S. DEPARTMENT OF EDUCATION'S OFFICE FOR CIVIL RIGHTS; CATHERINE LAMON, in her official capacity as the Assistant Secretary for Civil Rights; U.S. DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, in his official capacity as the Attorney General of the United States.

Respectfully submitted,

PERKINS & ASSOCIATES, LLC

By: ___ /s/ Mark A. Perkins _____
Mark A. Perkins (Bar No. 18529)

670 Albemarle Drive, Suite 1200
Shreveport, Louisiana  71006
T:  (318) 222-2426
F:  (318) 222-0458

Email:  perkins@perkinsfirm.com

Counsel for Intervenors Plaintiffs